797 P.2d 296

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Daniel LARA, Defendant–Appellant.**

No. 11197.

Court of Appeals of New Mexico.

June 26, 1990.

Certiorari Denied Aug. 1, 1990.

Hal Stratton, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

APODACA, Judge.

Defendant appeals his jury conviction for aggravated battery under one count of an indictment. He was acquitted under another count of aggravated battery and under one count of aggravated assault. He raises seven issues on appeal: (1) improper exercise of prosecutor's peremptory challenges in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (2) illegality of warrantless arrest and the subsequent search of defendant's home and erroneous denial of motion to suppress the resulting statements and evidence; (3) erroneous refusal of jury instruction on defendant's theories of self-defense and defense of property; (4) state's failure to present exculpatory evidence to the grand jury requiring dismissal of the indictment; (5) erroneous denial of defendant's motion to exclude reference to his prior felony convictions; (6) erroneous denial of defendant's motion to require the state to elect charges under count 1; and (7) denial of due process and a fair trial by virtue of cumulative error. Not being persuaded by defendant's arguments with respect to all issues, we affirm his conviction.

FACTS

On the night of the incident leading to defendant's arrest, defendant, his friend (Carla), her brother (James), and James' friend (Gloria) had gone to a nightclub. Defendant and Carla argued, and defendant left the bar angry. Being without a car, Carla, James, and Gloria later got a ride to defendant's home. Carla wanted to talk to defendant and knocked at the front door. When there was no answer, she went to the back door as defendant had previously instructed her to do. James and Gloria waited a few feet away from the house in the back yard. Carla testified defendant let her in, cursed at her, and hit her as she stepped inside the house. She blacked out momentarily. Upon regaining consciousness, she ran out of the house, and defendant chased her. She turned around and saw something sharp hit her elbow, where she later realized she had been cut.

James testified he saw Carla, bleeding, running out of the house. Defendant ran to where James and Gloria were standing and cursed at them, accusing them of breaking his car's windshield. Defendant lifted his arm as if to hit Gloria, and James raised his hand to block defendant's blow.

James immediately felt a sting and later noticed his hand was bleeding. Although defendant later claimed James had kicked him, James denied it. Carla, James, and Gloria finally ran away from defendant. Police officers encountered the victims on a public street a short distance from defendant's residence. Carla and James were bleeding. They told the officers what had happened, and the officers then proceeded to defendant's house.

Upon arrival, they knocked on defendant's front door and announced themselves as police officers. Defendant let them in. Once inside, the officers arrested and handcuffed defendant and read him his *Miranda* rights. While performing a protective sweep of the residence, the officers noticed blood stains on the wall and floor of the kitchen. They told defendant they were investigating a stabbing and asked him where the knife was. Defendant admitted to the stabbing, claiming he was only defending himself and his property, and verbally directed the officers to a drawer in the kitchen, where they found the knife. Defendant then told his version of what had occurred, claiming he thought someone had broken into the house. He went into the kitchen, saw a figure in the dark, and immediately began swinging. After Carla identified herself, defendant chased her outside with the knife because he was still angry over their argument. Once he was outside, defendant claimed James kicked him and that he had swung back with the knife to protect himself.

Defendant was charged with one count of aggravated battery (against Carla), one count of aggravated assault (against Gloria), and one count of aggravated battery (against James). He was convicted of aggravated battery against James and acquitted under the other two counts. However, a mistrial was declared with respect to an alternative count in connection with the charge of aggravated battery against Carla.

## DISCUSSION

*Prosecutor's Use of Peremptory Challenges.*

After voir dire, five prospective jurors, including three hispanics, were excused for cause. The prosecutor then used two of his three peremptory challenges to strike hispanic members of the venire and did not use the third challenge. The prosecutor also used its alternative peremptory to strike an alternate hispanic jury venire member. Defendant struck five jurors, including one hispanic. The final jury chosen included two hispanic members. Defendant, relying on *Batson*, argued the prosecutor had used his peremptory challenges in a discriminatory manner. The trial court then asked the prosecutor to explain the basis for the challenges. The prosecutor complied and the trial court found the prosecutor's reasoning acceptable.

A defendant may challenge the constitutionality of the state's selection of members of the petit jury when he shows he is a member of a cognizable racial group and establishes a prima facie case that potential jurors from his group were excluded from the jury for reasons of race. *State v. Goode*, 107 N.M. 298, 756 P.2d 578 (Ct.App.1988); *State v. Sandoval*, 105 N.M. 696, 736 P.2d 501 (Ct.App.1987). Under the sixth amendment, a defendant is entitled to select a petit jury from a venire that constitutes a representative cross-section of the community in which he is tried. *State v. Aragon*, 109 N.M. 197, 784 P.2d 16 (1989). To establish a prima facie case, defendant must show that: (1) he is a member of a cognizable racial group; (2) the state has exercised its peremptory challenges to remove members of that group from the jury panel; and (3) these facts and any other relevant circumstances raise an inference that the state used its challenges to exclude members from the panel solely on account of their race. *State v. Goode.*

Although the trial court did not expressly determine whether defendant had made a prima facie case, it did inquire into the prosecutor's reasons for the peremptory challenges. Our case law is clear that a defendant must first make a prima facie showing of the improper use of such challenges and only then does the burden shift to the state to come forward with a neutral

explanation for its challenges. *See State v. Moore,* 109 N.M. 119, 782 P.2d 91 (Ct.App. 1989).

 The state argues that this case is factually indistinguishable from our decision in *State v. Jim,* 107 N.M. 779, 765 P.2d 195 (Ct.App.1988). *Jim* held that the defendant had failed to establish a prima facie case of discriminatory use by the state in its peremptory challenges. We agree with the state that our holding in *Jim* is dispositive of this issue and that defendant failed in establishing a prima facie case. The state concedes that the first two elements of defendant's prima facie burden are not at issue here. However, it argues that, as was the case in *Jim,* defendant failed to make a prima facie case with respect to the third element. This third factor requires a showing that the facts and any other relevant circumstances raise an inference that the state used its challenges to exclude members from the panel solely on account of their race.

Under the third element of defendant's burden to establish a prima facie showing, some of the circumstances that will raise an inference of racial discrimination are (1) a showing by defendant that his racial group is substantially under-represented on the jury; (2) the susceptibility of the case to racial discrimination, as for example, where defendant and the victim are of different races; and (3) a showing that the state's challenges have caused the jury to contain no members of defendant's race. *See State v. Goode.* With respect to the first circumstance, we believe there was no showing by defendant that hispanics were substantially under-represented on his jury. It is unnecessary for the petit jury to mirror the community and reflect the various distinctive groups in the population, and a defendant is not entitled to a jury of any particular composition. *See State v. Aragon,* 109 N.M. at 201, 784 P.2d at 20 (quoting with approval *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975)). We note defendant concedes that two jurors with hispanic surnames were properly excused for cause, which

partially accounts for any imbalance in the jury makeup.

We also consider significant the fact that the prosecutor used only two of his available three peremptories. *See United States v. Montgomery,* 819 F.2d 847 (8th Cir.1987) (the fact the government accepted a jury that included two blacks, when it could have used its remaining peremptory challenge to strike these potential jurors, shows government did not attempt to exclude all blacks, or as many as it could). Similarly, the second circumstance is non-existent in this appeal, since defendant and the victims were all of the same ethnic group, which lessens an inference of discrimination in the jury selection. *Cf. State v. Goode* (defendant was black, victim was white, both of the state's witnesses were white, and the case involved overtones of an intimate interracial relationship). Under the third circumstance, defendant failed to show that the state's challenges caused the jury not to contain members of defendant's race or that the state's actions established a racially motivated pattern in its strikes. *Cf. United States v. Montgomery,* 819 F.2d 847 (8th Cir.1987); *United States v. Dennis,* 804 F.2d 1208 (11th Cir. 1986).

We conclude defendant failed to establish a prima facie case of discriminatory use of the state's peremptory challenges. We therefore need not consider whether the state provided racially-neutral explanations for the challenges. *See id.*

*Denial of Defendant's Motion to Suppress.*

 Initially, in addressing this issue, we observe that defendant was acquitted of the aggravated battery against Carla and that a mistrial was granted on the alternative battery count involving her as a victim. Defendant was only convicted under the count charging an aggravated battery against James, which occurred *outside* of defendant's residence. On the other hand, the evidence sought to be suppressed was discovered *inside* the house. Under these circumstances, with the exception of the knife, we fail to see how defendant was

prejudiced by the evidence found inside the house, since such evidence did not relate to the attack on James.

██ Additionally, we believe admission of the blood stain evidence, as well as of the knife, was harmless error beyond a reasonable doubt. We held in *State v. Dobbs,* 100 N.M. 60, 68, 665 P.2d 1151, 1159 (Ct.App.1983), that, for error to be harmless, the following must exist:

1) substantial evidence to support the conviction without reference to the improperly admitted evidence; 2) such ͵a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so miniscule that it could not have contributed to the conviction; and 3) no substantial evidence to discredit the State's testimony.

The victims' testimony, which admitted use of the knife, for the most part, was not discredited other than by defendant's self-defense assertions. Even if the evidence sought to be suppressed was inadmissible, we hold there was other evidence, namely, the victims' testimony and the corroboration of it by the police officers' testimony, that established guilt beyond a reasonable doubt. It would follow that admission of the allegedly inadmissible evidence was harmless beyond a reasonable doubt. *Id.* Nevertheless, we directly address the merits of defendant's arguments under this issue.

1. Warrantless Arrest in Defendant's Residence

██ Defendant argues his warrantless arrest and subsequent search of his home were illegal. Consequently, he claims the evidence seized as a result of the search, as well as the statements he made after the arrest, should have been suppressed. We disagree. We believe that there existed both consent and exigent circumstances in this case, thus making the arrest lawful.

Although one of the two officers who entered the house stated they had gone in without permission, the other officer testified that defendant invited them in. Any conflict in the evidence was for the trial

court to resolve. *See State v. Valencia Olaya,* 105 N.M. 690, 736 P.2d 495 (Ct.App. 1987). We therefore determine that consent alone supported the arrest.

However, even in the absence of consent, the arrest was constitutionally valid nonetheless. This court has held that a nonconsensual entry into an individual's residence to make a warrantless arrest is proper where there are both probable cause and exigent circumstances necessitating an immediate entry. *See State v. Copeland,* 105 N.M. 27, 727 P.2d 1342 (Ct.App.1986). Probable cause exists when the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been, or is being, committed. *Id.* Officer Brown testified he assisted Officer Dannenbaum, who had been flagged down by the victims. He also said he heard the victims identify the location where they had been assaulted and the perpetrator of the assault. The officers then obtained defendant's name and address from the victims and drove to the residence nearby.

We have held that exigent circumstances exist when there is an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. *Id.* Shortly before arriving at defendant's home, the police officers had been in contact with the bleeding and hysterical victims, who claimed that, just minutes before, defendant had committed acts of violence against them with a knife. There was nothing leading the officers to believe that defendant had yet been apprehended. They could have reasonably believed he would be attempting to escape or destroy evidence of the crime. The arrest took place immediately after the officers had entered the residence. Under these circumstances, the trial court could reasonably have concluded there were exigent circumstances, as well as probable cause, justifying the warrantless arrest. *See State v. Chavez,* 98 N.M. 61, 644 P.2d 1050

(Ct.App.1982). We determine that defendant's warrantless arrest was proper. *See State v. Copeland.*

## 2. Warrantless Search of Defendant's Residence

Warrantless searches are permissible under the fourth amendment if they fall within one of the following exceptions to the warrant requirement: (1) plain view; (2) probable cause plus exigent circumstances; (3) search incident to lawful arrest; (4) consent; (5) hot pursuit; and (6) inventory searches. *State v. Ruffino,* 94 N.M. 500, 612 P.2d 1311 (1980). After the officers arrested defendant, they conducted a protective sweep of the residence. Defendant argues there were no facts suggesting the need for a protective sweep. We disagree. As observed in *Maryland v. Buie,* —— U.S. ——, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), "[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *See also Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1968).

Despite the fact that the officers may have been led by the victims to believe that defendant was alone in the house, Carla, who was hysterical, had been only in the kitchen. The other two victims had not entered defendant's residence. For these reasons, and because of the violent nature of the crime that had just occurred, we conclude the officers were justified in conducting a protective sweep of the residence. *See United States v. Mabry,* 809 F.2d 671 (10th Cir.) (a warrantless search in the form of a protective sweep is valid if it is based on probable cause and exigent circumstances), *cert. denied,* 484 U.S. 874, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987). We previously noted that there existed both probable cause and exigent circumstances under the facts of this appeal. We therefore hold the protective sweep was proper. *See id. See also State v. Stenz,* 109 N.M. 536, 787 P.2d 455 (Ct.App.1990).

Defendant argues that even if the arrest and the protective sweep were lawful, there was no justification for the search that followed. We disagree. The officers could seize items in plain view. To justify discovery of incriminating evidence under the plain view exception to the warrant requirement, the officers must have lawfully been in a position from which they observed the evidence, they must have discovered it inadvertently, and the incriminating nature of the evidence must have been immediately apparent. *See State v. Miles,* 108 N.M. 556, 775 P.2d 758 (Ct.App.1989). We have already concluded the officers were lawfully conducting a protective sweep of defendant's residence. It was during this procedure that the blood stains were discovered. The incriminating nature of the blood was immediately apparent in light of the fact the officers were investigating a battery complaint from victims who were bleeding. Because the blood was in plain view, we hold it was subject to seizure through the use of the police photographer. *See id.* We conclude the trial court's refusal to suppress the evidence of the blood was proper. *See also Maryland v. Buie.*

Defendant next argues he did not consent to a search of his house. On this basis, he claims the knife and all of his statements, both verbal and written, should have been suppressed. Consent will validate a warrantless search and seizure. *State v. Ruffino.* The voluntariness of a consent to search is a question of fact for the trial court. *State v. Mann,* 103 N.M. 660, 712 P.2d 6 (Ct.App.1985). On appeal, we determine whether the evidence, viewed in the light most favorable to the trial court's finding, substantially supports that finding. *Id.* The determination of voluntariness involves a three-tiered analysis: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress and coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights. *State v. Anderson,*

107 N.M. 165, 754 P.2d 542 (Ct.App.1988). In warrantless search situations, the state has the heavy burden of proving by clear and convincing evidence the absence of duress, coercion, or other factors that would vitiate the voluntary nature of the consent. *State v. Valencia Olaya.*

■ The officers arrived at defendant's residence to arrest him and to investigate the stabbings. Defendant was immediately placed under arrest and read his *Miranda* rights. After the officers discovered the blood in the kitchen, we believe they could inquire of the knife's location. *See generally State v. Cohen,* 103 N.M. 558, 711 P.2d 3 (1985) (court found detention valid, for it was based on articulable and available facts, which warrant officer as person of reasonable caution to believe that action taken was appropriate), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986). Defendant had already been "Mirandized" when he directed the officers to the knife in the kitchen drawer, admitted to the stabbings, and proceeded to explain his version of what had happened. He stated he thought an unknown person had broken into his house and he began swinging. He subsequently ran outside with the knife, chasing one victim and approaching the other two victims in the yard. The officers testified defendant answered their questions without hesitation, appeared willing to cooperate, and even volunteered information not asked of him. He later gave a written statement of his version of events after he signed a form acknowledging he had been advised of his constitutional rights. In light of these circumstances, the trial court could reasonably conclude that defendant's actions in directing the officers to the knife, as well as in giving both oral and written statements, were taken with specific and unequivocal consent. For these reasons, the trial court could reasonably conclude that the statements and the evidence seized were not the product of duress or coercion. *See State v. Anderson.* We thus hold the trial court's denial of the motion to suppress was supported by substantial evidence.

*Refusal to Instruct on Defendant's Defense Theories.*

■ Defendant was acquitted under count 1, the aggravated battery against Carla. The jury failed to reach a verdict with respect to the alternative charge in count 1, and the trial court declared a mistrial. We therefore hold defendant was not prejudiced by the trial court's refusal to give the requested instruction on defense of property. *See State v. Hoxsie,* 101 N.M. 7, 677 P.2d 620 (1984), *overruled on other grounds, Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 779 P.2d 99 (1989) (an assertion of prejudice is not a showing of prejudice, and in the absence of prejudice there is no reversible error).

Additionally, defendant's requested instruction stated that it was necessary to strike Carla because it appeared to defendant she was about to unlawfully enter the house. There was no evidence to support this instruction as requested. Carla testified she was already in defendant's residence when he swung at her. Similarly, even defendant stated he hit Carla in the kitchen, after she had entered. Because there was no evidence to support the jury instruction as written, the trial court did not err in refusing to give it. *See State v. Montano,* 95 N.M. 233, 620 P.2d 887 (Ct. App.1980), *overruled on other grounds, Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982) (jury instructions should not be given on areas where there is no evidence to support the instruction).

■ We now turn our discussion to the trial court's refusal of defendant's requested self-defense instruction relating to the aggravated battery against James. We are well aware that, even where there is only slight evidence to establish self-defense, the trial court must give such an instruction. *See State v. Heisler,* 58 N.M. 446, 272 P.2d 660 (1954). However, to premise error on a trial court's refusal to instruct, the defendant must tender a legally correct statement of the law. *State v. Barber,* 93 N.M. 782, 606 P.2d 192 (Ct.App. 1979).

■ In his statement, defendant stated James kicked him, and it was only then

that defendant swung at him. After the victims ran away, defendant said he went back into the house, where he returned the knife to the drawer. Defendant's requested instruction provided that "[t]he force used by the defendant would not ordinarily create a substantial risk of death or great bodily harm." The committee commentary to SCRA 1986, 14–5181, the uniform self-defense jury instruction defendant relied on, guides us in resolving this issue. It states that the portion of the instruction we have quoted above is to be used only if there is evidence that a defendant used a force that ordinarily would not cause death or great bodily harm but that nevertheless resulted in death or great bodily harm. Since we have been pointed to no evidence that James suffered great bodily harm, *see* SCRA 1986, 14–131, inclusion of the quoted language was inappropriate. As an illustration, the committee commentary notes that a person is not guilty of homicide if he unintentionally kills a third person in self-defense, citing *State v. Sherwood,* 39 N.M. 518, 50 P.2d 968 (1935); 55 A.L.R.3d 620 (1974). Had James suffered great bodily harm, inclusion of the quoted material would have been appropriate.

We conclude that defendant's requested self-defense instruction was not a proper statement of the law, and therefore any error in the refusal of the instruction was not preserved for our review. *See State v. Barber.*

*Failure to Present Exculpatory Evidence to Grand Jury.*

Under this issue, defendant claims the state was required to present his verbal and written statements to the grand jury, contending they directly negated guilt. *See Buzbee v. Donnelly,* 96 N.M. 692, 634 P.2d 1244 (1981); *see also State v. Juarez,* 109 N.M. 764, 790 P.2d 1045 (Ct.App.1990). Preliminarily, the state contends defendant failed to provide an adequate appellate record on this issue for review. We disagree, concluding the portion of the transcript defendant refers to in his brief-in-chief is adequate for our review. From it, we can glean that the trial court upheld its previous ruling on the motion. Besides, the record proper contains a copy of defendant's motion to dismiss on this issue. Because defendant is raising this same issue on appeal, we can assume he was unsuccessful in convincing the trial court that his exculpatory statements directly negated defendant's guilt, as asserted in his motion. We therefore address this issue's merits.

■ The state is required to present to the grand jury only exculpatory evidence that directly negates defendant's guilt. *See Buzbee v. Donnelly;* NMSA 1978, § 31–6–11(B) (Repl. Pamp.1984). Direct evidence is evidence that, if believed, proves the existence of facts without inference or presumption. *Buzbee v. Donnelly.* In his statements, defendant admitted striking Carla and swinging at James. We thus hold that the statements did not directly negate defendant's guilt. The basis for our holding is that, even considering defendant's self-serving declarations that he acted in self-defense, the grand jury would still have to infer that the victims' actions were unlawful, thus justifying defendant's specific responses with the knife. For this reason, the state was not required under *Buzbee* to present the statements to the grand jury. We conclude the trial court did not err in dismissing the indictment.

*Denial of Motion to Exclude Reference to Felony Convictions.*

■ Defendant contends the trial court erred under this issue because it failed to properly balance the probative value of the admission of his prior felonies against the prejudice resulting from the admission. *See* SCRA 1986, 11–403. On appeal, we review the trial court's ruling under Rule 11–403 for an abuse of discretion. *See Mac Tyres, Inc. v. Vigil,* 92 N.M. 446, 589 P.2d 1037 (1979). The transcript reveals the trial court properly engaged in a balancing test before ruling the prior felonies would be admissible if defendant testified. We therefore hold that the trial court did not abuse its discretion in denying defendant's motion to exclude his prior felonies. *See id.; State v. Wyman,* 96 N.M. 558, 632

**517**

P.2d 1196 (Ct.App.1981); SCRA 1986, 11–609(A).

*Denial of Motion Requiring State to Elect Charges Under Count 1.*

■ For error to be reversible, it must be prejudicial. *See State v. Wright,* 84 N.M. 3, 498 P.2d 695 (Ct.App.1972). Defendant was acquitted on count 1 of the indictment. Any conviction that would have resulted under count 1 on the basis of the remaining alternative count would have been a single conviction. A mistrial was declared on the alternative count, however. We fail to see how defendant was prejudiced. For that reason, we hold the trial court's failure to require an election of charges under count 1 was not reversible error. *See* SCRA 1986, 5–204(A); *see also State v. Wright.*

*Cumulative Error.*

■ The doctrine of cumulative error has no application where no errors were committed and where defendant received a fair trial. *State v. Taylor,* 104 N.M. 88, 717 P.2d 64 (Ct.App.1986). Based on our discussion of the other issues, we have determined there were no errors committed. Thus, the doctrine of cumulative error does not apply. *Id.* We also conclude defendant received a fair trial.

CONCLUSION

In summary, defendant has failed to persuade us that error was committed on any of the issues raised on appeal. We therefore affirm his conviction.

IT IS SO ORDERED.

BIVINS, C.J., and DONNELLY, J., concur.