UNITED STATES of America, Appellee,

v.

Roland HENRY, a/k/a Roach, Appellant.

No. 93–3065.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 13, 1995.

Decided March 14, 1995.

Rehearing and Suggestion for Rehearing
In Banc Denied May 22, 1995.

John A. Shorter, Washington, DC, argued the cause and filed the briefs, for appellant.

Richard J. Nelson, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., John R. Fisher, and Karen E. Rhew, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before BUCKLEY, WILLIAMS and SENTELLE, Circuit Judges.

BUCKLEY, Circuit Judge:

Law enforcement officials arrested appellant Roland Henry as he emerged from an apartment at which he was staying. While conducting a protective sweep of the apartment, the officers found physical evidence that led to Henry's conviction on drug and firearms charges. Henry now appeals his convictions, principally on the ground that the district court erred in denying his motion to suppress the physical evidence. We affirm.

## I. BACKGROUND

On October 4, 1991, a team of United States Marshals and Washington Metropolitan Police Officers, armed with an arrest warrant but not a search warrant, went to a Northeast Washington apartment building in search of Henry, who was wanted for a parole violation. An informant had notified the marshals that Henry was staying in apartment # 34, was armed, and might be accompanied by confederates.

The officers began a stakeout of the apartment at 9:30 a.m., with Deputy Marshal Edwin Sloane stationed in a stairwell inside the apartment building and adjacent to the front door of apartment # 34. Late that morning, Henry's fiancee, Sharon Wood, emerged from the apartment. She told the police that Henry was inside and that there was no one else in the apartment with him. At 1:30 p.m., Henry stepped from the apartment into the internal hallway of the building, leaving the door ajar behind him. Sloane immediately placed Henry under arrest and radioed for backup. A number of officers arrived from their posts outside the building, physically subdued Henry, and handcuffed him. Sloane testified that at this point Henry's codefendant, James Hamilton, was outside the building peering into the hallway through a window, and Sloane heard Henry tell Hamilton that "they got me."

Sloane and four other officers stepped into the apartment with Henry. Sloane then conducted what he termed a "security check" of the apartment's bedroom, bathroom, and kitchen to verify that there were no armed individuals present who might threaten the officers. In the bedroom, Sloane discovered a gun sitting on top of a dresser and two bags of a white powdery substance in an open drawer, some of which was later determined to be heroin.

Henry moved to suppress the evidence of the firearm and heroin on the ground that the sweep of the apartment violated his Fourth Amendment right to be free from unreasonable searches. He did not, and does not now, dispute the Government's claim that these items were in "plain view" or that the evidence would be admissible against him at trial if the officers were legally in the bedroom when they first encountered it. Sloane testified that the officers had entered the apartment because Henry had requested the opportunity to change out of his pajamas, and that they had then conducted the sweep of the premises to protect themselves. Then–Chief United States District Court Judge Aubrey Robinson found the explanation for entrance to be of "doubtful credibility"—a finding the Government does not challenge here—but determined that the officers' actions were justified nonetheless. Citing *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the judge ruled that to justify a "protective sweep," the officers must have had, and in this case did have, a "reasonable belief, supported by specific and articulable facts, that the area swept harbored an individual posing a danger to the officers or others." *United States v. Henry and Hamilton*, 797 F.Supp. 1, 4–5 (D.D.C.1992).

Henry was subsequently tried and convicted of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), carrying or using a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1), and unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). He now contends that the district court erred by denying his suppression motion, that the court gave an improper jury instruction regarding the section 924(c)(1) charge, and that two of his attorneys provided him constitutionally ineffective representation. Only the first claim warrants discussion.

**1284**

## II. Discussion

▮ Except in specific, well-defined circumstances, the search of a home without a search warrant issued on probable cause is not reasonable and thus violates the Fourth Amendment of the Constitution. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989). In *Maryland v. Buie,* the Supreme Court recognized that following an in-home arrest, the police may conduct a protective sweep of the premises if there are

> articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

494 U.S. at 334, 110 S.Ct. at 1098.

In *Buie,* the police entered the defendant's home to execute an arrest warrant following an armed robbery allegedly committed by Buie and an accomplice. *Id.* at 328, 110 S.Ct. at 1095. After Buie was apprehended emerging from the basement, one officer entered the basement "in case there was someone else" in it. *Id.* Once inside, he spotted inculpatory evidence in plain view. *Id.* In remanding the case for reconsideration under this "articulable facts" test, the Court noted that the officers' interest in protecting their physical safety in connection with an arrest is sufficient to outweigh the intrusion suffered by the defendant. *Id.* at 334, 110 S.Ct. at 1098.

▮ Although *Buie* concerned an arrest made in the home, the principles enunciated by the Supreme Court are fully applicable where, as here, the arrest takes place just outside the residence. *See United States v. Kimmons,* 965 F.2d 1001, 1004, 1009–10 (11th Cir.1992) (sweep of house after suspect ordered out and placed under arrest); *United States v. Oguns,* 921 F.2d 442, 446–47 (2d Cir.1990) (sweep of apartment following arrest of suspect "just outside"). That the police arrested the defendant outside rather than inside his dwelling is relevant to the question of whether they could reasonably fear an attack by someone within it. The officers' exact location, however, does not

change the nature of the appropriate inquiry: Did articulable facts exist that would lead a reasonably prudent officer to believe a sweep was required to protect the safety of those on the arrest scene?

▮ We note at the outset that the officers' awareness that Henry had a previous weapons conviction and could be dangerous did not itself directly justify the sweep. Once Henry was in custody, he no longer posed a threat to the police. *See United States v. Tisdale,* 921 F.2d 1095, 1097 (10th Cir.1990). Uncontroverted testimony at the suppression hearing, however, established an objective basis for the officers to fear for their safety after the arrest. The informant had advised officers that Henry would have weapons and that Henry's "boys" or "counterparts" (as alternatively described by the informant) might be with him.

This information, coupled with the arrest just outside the open door, was sufficient to lead a reasonably prudent policeman to fear that he was vulnerable to attack. Moreover, the fact that the door was open could cause the officer to believe that anyone inside would be aware that Henry had been taken into custody, especially as Henry had been heard to tell Hamilton that "they got me." *See Oguns,* 921 F.2d at 446–47 (Customs Service agents "could have reasonably believed that people in the apartment ... heard them arrest [the defendant] and might jeopardize the agents' safety"). While it is true that the officers could not be certain that a threat existed inside the apartment, this does not impugn the reasonableness of their taking protective action. It is enough that they "have a reasonable basis for believing that their search will reduce the danger of harm...." *Buie,* 494 U.S. at 337, 110 S.Ct. at 1100 (Stevens, J., concurring).

Henry argues that the police could not have entertained such a fear in this instance because his fiancee had informed them an hour or so before his arrest that he was the only person in the apartment; and as the apartment was under continuing surveillance, the officers knew that no one had entered it after her departure. The police, however, had no way of knowing whether she was telling the truth, and we believe it unreason-

able in such circumstances to expect them to forego the necessary precautions.

The question remains whether the sweep of the apartment, as opposed to other protective action, was "justified by the circumstances." *Buie*, 494 U.S. at 335, 110 S.Ct. at 1099. Henry asserts that the officers could have closed the door to the apartment, left an officer to watch it, and hurried Henry out of the building. It is clear, however, that had they left the building and made their way to their vehicles, the officers could have been targets for any armed confederate who might have remained in the apartment. In balancing the Government's interests against an individual's Fourth Amendment rights, it is a bedrock principle that "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry v. Ohio*, 392 U.S. 1, 23, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968). If a protective sweep were unlawful on these facts, the officers would be required to do just that. We therefore agree with the district court that the sweep of Henry's apartment was an objectively reasonable precaution.

A protective sweep, of course, "may extend only to a cursory inspection of those spaces where a person may be found," and may last "no longer than is necessary to dispel the reasonable suspicion of danger...." *Buie*, 494 U.S. at 335–36, 110 S.Ct. at 1099. There is no allegation or evidence that the officers violated either of these limiting principles in this instance. As a result, we find that the sweep was lawful and that the district court correctly denied Henry's motion to suppress the evidence.

Accordingly, Henry's convictions are

*Affirmed.*