**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-067**

**Filing Date:  June 4, 2012**

**Docket No. 31,027**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellee,**

**v.**

**MARK ECKARD,**

   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Albert S. "Pat" Murdoch, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VANZI, Judge.**

**{1}**     Defendant Mark Eckard appeals the district court's denial of his motion to suppress. While executing an arrest warrant on Defendant and his wife, officers conducted a "protective sweep" of Defendant's house that led to the discovery and subsequent seizure of over one hundred and sixty pounds of marijuana. Defendant and his wife were outside their house in the back yard when the arrests took place. Defendant raises two issues on appeal. First, he contends that the testimony introduced at the suppression hearing failed to establish that the officers had the requisite safety concerns to justify conducting the sweep

1

of the house. Second, he argues that, even if the warrantless search of the house was lawful, officers acted outside the scope of the protective sweep in removing a blanket covering an area in the living room. We agree with Defendant that the sweep was unlawful and that the fruits of the entry must therefore be suppressed. Because we reverse on the first issue, we need not reach Defendant's second argument.

**BACKGROUND**

{2}     We summarize the underlying events in the light most favorable to the ruling rendered below. *State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785. James Burrell, a supervising agent with the United States Marshal Service, testified that, on March 20, 2008, he received information from the Fugitive Task Force in Mississippi that there were felony arrest warrants issued for Defendant and his wife and that they were living at an address in Albuquerque, New Mexico. Burrell testified that, at the time he received the information, he knew Defendant had a long criminal history, and he thought the warrant involved some type of narcotics violation. However, Burrell also testified that he could not remember whether, at the time of Defendant's arrest, he knew the specifics of Defendant's crimes, whether they involved any convictions for a violent crime, whether Defendant had used any weapons as part of the crimes, or whether Defendant and his wife were involved with any co-conspirators.

{3}     On that date, Burrell met with some federal marshals (agents) and briefed them about the case while other agents were sent to conduct surveillance of Defendant's home until Burrell could compile a team to approach the house and serve the arrest warrants. Burrell testified that the agents conducting surveillance did not see anyone enter or leave Defendant's house and that other than Defendant and his wife, they did not have any facts to suggest that anyone else was in the house.

{4}     Seven agents arrived at Defendant's house to serve the warrant, with some agents approaching the front door and some going around to the back of the house. Two agents knocked on the front door, but no one answered, and the agents did not hear any noise inside. Burrell testified that he heard an agent who had gone around to the back of the house yell, "Let me see your hands. We have them here." One agent stayed at the front door, while the remaining agents went around to the back of the house. Defendant and his wife were sitting at a patio table about ten feet from an open sliding glass door.

{5}     Defendant and his wife were placed in handcuffs and, in accordance with standard procedure, some agents remained with them while others entered the home and did a quick protective sweep of the premises. As they entered the house, the agents yelled, "Police, U.S. Marshals, is there anybody else in the house?" For approximately one to two minutes, the agents walked through the house and looked around to see if anyone was inside.

{6}     As the agents inside headed back toward the sliding glass door, they saw a large blanket up against the wall, covering some large items in the corner of the room. The agents

2

removed the blanket to make sure no one was hiding underneath. After removing the blanket, the agents saw six or seven dark trash bags that smelled of marijuana. Burrell testified that the agents did not open the bags but called narcotics officers from the Bernalillo County Sheriff's Office who obtained a search warrant based upon the information provided by the agents. The trash bags contained approximately one hundred and sixty pounds of marijuana.

**{7}** Defendant was charged with possession of marijuana over one hundred pounds with intent to distribute, conspiracy to commit possession of marijuana over one hundred pounds with intent to distribute, and possession of drug paraphernalia. *See* NMSA 1978, §§ 30-31-22(A)(1)(c) (2011); 30-28-2(A) (1979); 30-31-25.1(A) (2001). Defendant moved to suppress the evidence obtained from the protective sweep and subsequent search of the trash bags located in his home, claiming the sweep violated the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

**{8}** After a hearing, the district court denied the motion to suppress. The district court did not enter any written findings, but it orally concluded that the agents were justified in conducting the protective sweep and removing the blanket over the trash bags in order to ensure that no one was hiding under the blanket. The court also concluded that, once the blanket was removed, the strong odor of marijuana emanating from the bags justified the officers' actions in obtaining a warrant to search the contents of the trash bags.

**{9}** Defendant entered a conditional plea to possession of marijuana over one hundred pounds with intent to distribute, and he now appeals the denial of his motion to suppress.

**DISCUSSION**

**Standard of Review**

**{10}** We review the denial of a motion to suppress as a mixed question of fact and law. *State v. Williams*, 2011-NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307. We determine whether the law was correctly applied to the facts and view "the facts in the light most favorable to the prevailing party." *Cline*, 1998-NMCA-154, ¶ 6; *see State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d. 856. Furthermore, given the absence of any findings of fact or conclusions of law, we "draw all inferences and indulge all presumptions in favor of the district court's ruling." *Jason L.*, 2000-NMSC-018, ¶ 11.

**Propriety of the Protective Sweep**

**{11}** In general, law enforcement officers are not permitted to enter residences without a warrant. *See State v. Gutierrez*, 2008-NMCA-018, ¶ 16, 143 N.M. 422, 176 P.3d 1154 ("An officer's warrantless entry into a person's home is the exact type of intrusion against which the language of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution is directed."). In this case, the agents had a

warrant from Mississippi for Defendant's arrest, and based upon that warrant, the agents could have entered Defendant's home in order to arrest him. *See State v. Vargas*, 2008-NMSC-019, ¶ 10, 143 N.M. 692, 181 P.3d 684 (stating that in light of the evidence showing that the officers had reason to believe the defendant was inside the apartment, the warrant for the defendant's arrest authorized the officers' entry into the defendant's apartment); *State v. Krout*, 100 N.M. 661, 662, 674 P.2d 1121, 1122 (1984) (recognizing that, "for Fourth Amendment purposes, an arrest warrant supported by probable cause carries with it limited authority to enter a dwelling in which a suspect lives when there is reason to believe that the suspect is within"). However, the agents did not need to enter Defendant's home in order to effectuate the arrest. Instead, the agents found and arrested Defendant in the back yard of his home, at least ten feet from an open sliding glass door. Accordingly, the agents needed justification for entering Defendant's home. *See State v. Ryon*, 2005-NMSC-005, ¶ 23, 137 N.M. 174, 108 P.3d 1032 (observing that "[w]arrantless searches and seizures inside a home are presumptively unreasonable, subject only to a few specific, narrowly defined exceptions").

**{12}** In *Maryland v. Buie*, 494 U.S. 325, 334 (1990), the United States Supreme Court addressed when officers may properly conduct a limited protective sweep in conjunction with an in-home arrest. The Court held that:

> as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.* As a preliminary matter, we note that *Buie*'s holding permits a limited search of the area "immediately adjoining the place of arrest." *Id.*; *cf. Vale v. Louisiana*, 399 U.S. 30, 33-34 (1970) ("If a search of a house is to be upheld as incident to an arrest, that arrest must take place inside the house, not somewhere outside—whether two blocks away, twenty feet away, or on the sidewalk near the front steps." (citations omitted)). The rationale for allowing the protective sweep beyond the immediate area around the arrest site is to protect the officers from the threat posed "by unseen third parties in the house." *Buie*, 494 U.S. at 336. Therefore, in accordance with *Buie*, the agents here needed to "possess[] a reasonable belief based on specific and articulable facts that the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene." *Id.* at 337. Furthermore, the sweep must be limited to a "a cursory inspection of those spaces where a person may be found." *Id.* at 335; *see State v. Zamora*, 2005-NMCA-039, ¶¶ 16-17, 137 N.M. 301, 110 P.3d 517 (discussing the justification for and limitations on the scope of a protective sweep incident to an arrest).

**{13}**     In this case, the agents' entry into the house was approximately ten feet from where Defendant and his wife were sitting and therefore did not constitute a search of a space "immediately adjoining the place of arrest." *See Buie*, 494 U.S. at 334. In support of the protective sweep, however, Burrell testified as to his concerns regarding Defendant's general criminal history, general officer safety concerns, and standard protocol. He further testified that, based upon his twenty years' experience with the U.S. Marshals Service, when he went into a residence looking for one person, usually additional persons were present. The district court, persuaded by Burrell's testimony, found that the agents were authorized to enter Defendant's home in order to conduct a protective sweep incident to Defendant's arrest because it was reasonable for them to ensure that no one was in the house before proceeding with the warrant. *See State v. Trudelle*, 2007-NMCA-066, ¶¶ 22-27, 142 N.M. 18, 162 P.3d 173 (discussing the law of protective sweeps and what is needed to justify a sweep pursuant to an arrest). We disagree.

**{14}**     We recognize that a protective sweep of a residence may be reasonable whether incident to an arrest taking place inside the residence or to an arrest taking place a short distance from the residence if a reasonably prudent officer would anticipate a threat to officer safety. *See United States v. Colbert*, 76 F.3d 773, 776-77 (6th Cir. 1996) (recognizing that a protective search of a residence may be justified when the defendant is arrested outside of the home); *United States v. Henry*, 48 F.3d 1282, 1284 (D.C. Cir. 1995) (applying the principle enunciated by the Court in *Buie* to the protective sweep of a residence when the defendant was arrested just outside the door of the residence). The location of the arrest outside the home is relevant in determining whether officers had the requisite "reasonable articulable suspicion" of a threat to their safety. *Colbert*, 76 F.3d at 776-77; *see Henry*, 48 F.3d at 1284 (recognizing that the location of the arrest outside the dwelling is relevant to the issue of whether the officers could reasonably fear an attack by someone inside). We are not persuaded that the protective sweep in this case was reasonable because the State failed to show that the agents had sufficient articulable facts to reasonably conclude that other people might be hiding who posed a threat to the agents or others at the arrest scene. *See United States v. Carter*, 360 F.3d 1235, 1242 (10th Cir. 2004) (holding that officers were not justified in conducting a protective sweep of the suspect's garage and backyard incident to his arrest for possession of marijuana in the back yard because the government pointed to "no specific, articulable facts" suggesting that someone else was on the premises who posed a danger to the officers); *Colbert*, 76 F.3d at 778 (holding that an officer's lack of information "cannot be an articulable basis for a sweep that requires information to justify it in the first place").

**{15}**     Our review of the testimony at the suppression hearing indicates an absence of any facts suggesting the presence of, much less any danger posed by, other persons on the scene. Burrell admitted he had no facts to suggest that anyone else was in the house, and he admitted that he neither saw nor heard any movement in the house. To the extent other agents conducted surveillance of the residence before Burrell arrived, they also failed to detect the presence of any other persons. We therefore conclude that the search was unwarranted because there was no evidence to support any specific safety concerns

5

involving any other persons at the arrest scene. *See United States v. Chaves*, 169 F.3d 687, 692 (11th Cir. 1999) (holding that "in the absence of specific and articulable facts showing that another individual, who posed a danger to the officers or others, was inside the warehouse, the officers' lack of information [could not] justify the warrantless sweep" and dismissing the government's argument that someone must have been guarding the cocaine inside the warehouse as the kind of "unparticularized suspicion or hunch" that *Buie* held was insufficient to justify a warrantless sweep (internal quotation marks and citation omitted)).

**{16}** The State contends that other courts have determined that a protective sweep incident to an arrest just outside a building and near an open door was justified "under circumstances similar to those [in this case]." We are not persuaded by the application of those cases here. All of the cases cited by the State as support for their argument involve additional facts suggesting the presence of other persons or some type of threat beyond the danger presented by an arrest near an open door, such as evidence of ongoing crimes or violence at or near the time of the arrest.

**{17}** For example, in *United States v. Lawlor*, 406 F.3d 37, 39, 42 (1st Cir. 2005), the court held a protective sweep incident to an arrest just outside the residence was reasonable based upon evidence showing other persons at the scene, spent shotgun shells on the floor in front of the door but no visible weapons, and a report of gun shots at the scene. Likewise, in *Henry*, the court affirmed the reasonableness of the protective sweep because there was uncontroverted testimony that "[t]he informant had advised officers that [the defendant] would have weapons and that [the defendant's associates] might be with him." 48 F.3d at 1284. The court in *Henry* held that "[t]his information, coupled with the arrest just outside the open door, was sufficient to lead a reasonably prudent policeman to fear that he was vulnerable to attack." *Id.* Neither of these types of factual scenarios are present here.

**{18}** Turning to New Mexico case law, the State argues that affirmance is warranted by our Supreme Court's decision in *State v. Jacobs*, 2000-NMSC-026, 129 N.M. 448, 10 P.3d 127. In *Jacobs*, the Court held that the protective sweep was justified by articulable facts even though the officers testified that they "had no way of knowing who was in the house or what weapons might be there." *Id.* ¶ 38. However, our Supreme Court recognized that there was some evidence suggesting the presence of other persons because the officers testified to seeing another person enter the house and never seeing that person leave. *Id.* ¶¶ 36, 38. In addition to the possible presence of other persons, there were threats to officer safety because the officers testified that the defendant had told them there were guns and other weapons inside the house. *Id.* ¶ 38. Again, that is not the situation here.

**{19}** In sum, none of the cases cited by the State support the propriety of the sweep in this case because there was no specific showing that Defendant and his wife were armed or that other persons might be with them. Allowing the agents to justify the protective sweep in the absence of information suggesting there may be a danger posed by others would be "directly contrary to the Supreme Court's explicit command in *Buie* that the police have an articulable basis on which to support their reasonable suspicion of danger from inside the home."

*United States v. Archibald*, 589 F.3d 289, 300 (6th Cir. 2009). Accordingly, we conclude that, based on the agents' lack of information, the sweep of Defendant's house was unauthorized. *See id.* (recognizing that "[c]learly *Buie* requires more than ignorance or a constant assumption that more than one person is present in a residence").

**{20}**    Perhaps recognizing the consequences of the agents' failure to show that Defendant might be armed or that other persons might be with him, the State argues the need to ensure officer safety. It contends that, in the interest of safety, the focus must be on the nature of the crime for which the arrest is being sought, not whether there are articulable facts that someone might be hiding on the premises, and notes the dangerousness inherent to an in-house arrest. The State further contends that the danger of conducting an in-house arrest on someone like Defendant, a fugitive wanted for trafficking in narcotics, is sufficient to warrant a protective sweep. We disagree.

**{21}**    Turning first to the State's argument concerning the danger inherent to an in-home arrest, we note that the United States Supreme Court in *Buie* rejected a similar argument made by the state, specifically with regard to the inherent danger of an in-home arrest for a violent crime. 494 U.S. at 334 n.2. The Court there made clear that the justification for a protective sweep is based upon the threat posed by third persons, not the threat posed by the arrestee, and thus the sweep is only allowed if "justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." *Id.* at 336.

**{22}**    We are also not persuaded by the State's contentions regarding the specific danger posed by Defendant's status as a fugitive suspected of trafficking in narcotics. As an initial matter, the only testimony introduced at the suppression hearing supporting the State's contentions that the agents knew Defendant and his wife were suspected of trafficking in narcotics and that they had an "extensive criminal history involving a narcotics violation" is Defendant's admission to an outstanding warrant in Mississippi for possession of thirty-five pounds of marijuana at an unspecified time in the past. We question whether this one-time possession charge constitutes an "extensive history" or "trafficking." *Compare* NMSA 1978, § 30-31-20(A)(3) and (B) (2006) (defining trafficking as possession of "a controlled substance enumerated in Schedule I or II that is a narcotic drug; . . . a controlled substance analog of a controlled substance enumerated in Schedule I or II that is a narcotic drug; or . . . methamphetamine, its salts, isomers and salts of isomers" with intent to distribute and stating that such trafficking is punishable as a first or second degree felony), *with* § 30-31-22(A)(1)(a) and (b) (defining possession with intent to distribute marijuana in an amount less than one hundred pounds as a third or fourth degree felony).

**{23}**    Furthermore, even assuming the agents did know that Defendant and his wife were fugitives on outstanding warrants involving possession of marijuana, we are not convinced this knowledge provides sufficient justification for the protective sweep without some evidence of ongoing drug trafficking or the presence of other potentially dangerous persons. *See Colbert*, 76 F.3d at 777 (stating that factors regarding the dangerousness of the arrestee,

such as the arrestee's status as an escapee wanted for murder and his possible involvement in drug trafficking, are not appropriate in determining whether officers reasonably believed someone else might be in the house who poses a danger to them thus justifying a protective sweep); *Henry*, 48 F.3d at 1284 (holding that the officers' awareness that the defendant could be dangerous and that he had a previous weapons conviction was not enough to justify the sweep because, once the defendant was in custody, "he no longer posed a threat to the police"); *United States v. Akrawi*, 920 F.2d 418, 420-21 (6th Cir. 1990) (holding that officers were not justified in conducting a protective sweep incident to the defendant's arrest despite the defendant's alleged involvement with narcotics and possession of weapons because the defendant did not resist and there was no noise or other evidence suggesting anyone else was present in the house).

**{24}**  The State cites to *State v. Lara*, 110 N.M. 507, 514, 797 P.2d 296, 303 (Ct. App. 1990), in support of its argument that this Court should focus on the serious nature of the crime for which the arrest is sought. Specifically, the State relies on the holding in that case where we concluded that the protective sweep was justified in part because of "the violent nature of the crime that had just occurred." Our review of *Lara* indicates the State's reliance is misplaced.

**{25}**  First, we question the precedential impact of *Lara* on the issue of the propriety of a protective sweep because the Court's discussion of that issue is dicta insofar as we had already determined that, even if the sweep was unlawful and the evidence wrongfully admitted, the defendant was not harmed by the wrongful admission. *Id.* at 512-513, 797 P.2d at 301-302. Furthermore, we are not persuaded by the application of the analysis in *Lara* to this case because, in *Lara*, the officers conducted the protective sweep after finding and arresting the defendant inside the house while investigating a violent crime that "had just occurred" inside of the house. *Id.* at 511, 514, 797 P.2d at 300, 303.

**{26}**  In contrast to the facts in *Lara*, the agents here were not investigating a violent crime that "had just occurred" inside the house or even within New Mexico. Instead, they were merely serving an arrest warrant for a crime that had taken place in Mississippi at some unspecified point in the past. In any event, *Lara* does not compel a conclusion that a protective sweep is justified based on the serious nature of the crime being investigated. *See, e.g.*, *United States v. Hogan*, 38 F.3d 1148, 1149-50 (10th Cir. 1994) (holding that the protective sweep incident to the defendant's arrest in front of his house on suspicion of murder was not justified because the evidence that an accomplice was involved in the murder did not equate to evidence that someone would be hiding out in the defendant's house a month after the crime occurred, and at the time of the arrest, the officers were not chasing the defendant from a crime scene).

**{27}**  The State also relies on a number of federal cases that it maintains support its position that protective sweeps are justified if incident to the arrests of drug traffickers or fugitives because "drug trafficking frequently begets violence." However, our review of these cases reveals facts beyond the arrestee's status as a drug offender, including facts

8

suggesting that other persons were present, facts indicating that the officers were already in the house searching for the defendant at the time of the sweep, or other evidence of an ongoing criminal operation in the house. *See, e.g.*, *United States v. Green*, 560 F.3d 853, 856 (8th Cir. 2009) (noting the presence of four other people in the house in addition to the defendant and that the defendant was only located after the officers began the protective sweep); *United States v. Cash*, 378 F.3d 745, 746-47 (8th Cir. 2004) (affirming the protective sweep when the evidence showed that on the day the defendant was arrested inside her house on outstanding warrants, an informant had told the officers that the defendant possessed a large quantity of drugs, the informant had seen drugs in the house, and the officers had testified that the defendant had exhibited extremely nervous behavior toward them and that she attempted to conceal a shopping bag located in plain view); *United States v. Smith*, 131 F.3d 1392, 1396 (10th Cir. 1997) (holding that the officers were justified in conducting a protective sweep incident to the defendant's arrest on outstanding warrants because the officers had information that the defendant was suspected of running a methamphetamine operation on the premises, other people were living there and assisting the defendant, and at the time the sweep began, the defendant had not yet been located); *United States v. Patrick*, 959 F.2d 991, 994, 996 (D.C. Cir. 1992) (holding that the officers were entitled to conduct a protective sweep because they located the defendant in the house, there were other people present, and the defendant was actively trying to conceal drugs), *abrogated on other grounds by Apprendi v. New Jersey*, 530 U.S. 466 (2000). In this case, the agents were merely trying to serve an arrest warrant, and when they did so, they found Defendant in the back yard. They were not investigating drug trafficking or any other ongoing crime that was allegedly taking place inside the residence. *Cf. Buie*, 494 U.S. at 334 n.2 (noting that "the existence of the arrest warrant implies nothing about whether dangerous third parties will be found in the arrestee's house").

**{28}** We acknowledge the State's assertion that officers making an arrest in or just outside of a residence may "face grave dangers, sometimes greater than those they face on the street." However, we must adhere to the requirements imposed by *Buie*, including the need for articulable facts to support a reasonable inference of a threat to officer safety posed by other individuals, which serve to "strike[] the proper balance between officer safety and citizen privacy." 494 U.S. at 334 n.2. In *State v. Spencer*, 848 A.2d 1183, 1196 (Conn. 2004), the Connecticut Supreme Court observed that officers risk possible harm in "nearly every arrest involving a large quantity of drugs, in or just outside of a home[.]" "To allow the police to justify a warrantless search based solely upon that possibility would threaten to swallow the general rule requiring search warrants." *Id.*; *see Colbert*, 76 F.3d at 777 (observing that, "[i]f district courts are allowed to justify protective sweeps based on the dangerousness of the arrestee, nearly every arrest taking place in or near a home will include a protective sweep").

**{29}** Accordingly, we disagree with the State that out-of-state charges for possession of thirty-five pounds of marijuana provide sufficiently specific evidence that Defendant "might" be accompanied by accomplices who "might" resort to violence to thwart the arrest or who "might" use violence "to protect their drug business." Rather, our review of the

record indicates a complete lack of any specific evidence suggesting that Defendant was engaged in an enterprise involving accomplices, such as middlemen, partners, growers, couriers, enforcers, or armed security personnel. Furthermore, at the time of the sweep, the agents had no evidence that would lead one to believe that Defendant and his wife were ever engaged in drug trafficking in New Mexico, nor any evidence that there might be narcotics or weapons in their home. Without such evidence, the State failed to provide specific, articulable facts to establish a reasonable belief that Defendant's residence might harbor a dangerous individual so as to warrant a protective sweep. *See Buie*, 494 U.S. at 336-37.

{30}    Finally, because we determine that the protective sweep was unjustified, the limited extent of that sweep does not serve to remedy the unwarranted intrusion into Defendant's home. *See Buie*, 494 U.S. at 334 n.2 (rejecting the government's contention that a protective sweep is such a de minimis intrusion such that no level of objective justification should be required); *Hogan*, 38 F.3d at 1150 (recognizing that the justification for a protective sweep of even a few minutes would be questionable in light of the officer's concession that after arresting the defendant in front of his house, the officer could have just put the defendant in the car and driven away). Moreover, given the illegal nature of the protective sweep, the resulting search warrant is also invalid because it was based upon evidence tainted by the illegal entry, and all of the evidence seized from Defendant's home must be suppressed as the fruit of the initial illegal entry. *See Trudelle*, 2007-NMCA-066, ¶ 40 (recognizing that evidence obtained from a search that is "conducted pursuant to a warrant based partially on tainted information gathered during a prior illegal search" is also tainted and must be suppressed (internal quotation marks and citation omitted)); *State v. Ingram*, 1998-NMCA-177, ¶ 9, 126 N.M. 426, 970 P.2d 1151 ("Evidence which is obtained as a result of an unconstitutional search . . . may be suppressed under the exclusionary rule." (internal quotation marks and citation omitted)). The district court erred in denying Defendant's motion to suppress.

**New Mexico Constitution**

{31}    Because we hold that the protective sweep violated the Fourth Amendment of the United States Constitution, we need not decide whether it violated Article II, Section 10 of the New Mexico Constitution. *See State v. Montano*, 2009-NMCA-130, ¶ 23, 147 N.M. 379, 223 P.3d 376.

**CONCLUSION**

{32}    For the reasons set forth above, we reverse the district court's order denying Defendant's motion to suppress.

{33}    **IT IS SO ORDERED.**

LINDA M. VANZI, Judge

**WE CONCUR:**

_____

**TIMOTHY L. GARCIA, Judge**

_____

**J. MILES HANISEE, Judge**

**Topic Index for _State v. Eckard_, Docket No. 31,027**

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Fourth Amendment
Suppression of Evidence

**CRIMINAL LAW**
controlled Substances

**CRIMINAL PROCEDURE**
Arrest Warrant
Exigent  Circumstances
Incident to Arrest
Motion to Suppress
Search and Seizure
Warrantless Search