[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13677
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20803-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL CHEREECE SCOTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 17, 2013)

Before BARKETT, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Michael Scott appeals his convictions for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  On appeal, Mr. Scott argues that an initial protective sweep of his residence by arresting officers was unlawful because it was not supported by reasonable suspicion.  As a result, he contends that evidence seized in a subsequent search of his home must be suppressed. While we conclude that the initial protective sweep of Mr. Scott's home was illegal, we nonetheless affirm the district court's denial of his motion to suppress as the subsequent search of his home was made pursuant to validly obtained consent.

## I.  Background

On December 21, 2010, three officers of the Miami-Dade Police Department went to Mr. Scott's residence to investigate an anonymous tip that he was a convicted felon in possession of weapons. After conducting several minutes of surveillance of Mr. Scott's home, two officers knocked on the front door. When Mr. Scott opened the door, investigating officers could smell raw and smoked marijuana and could see a clear sandwich bag of marijuana on a table in the kitchen. The officers asked Mr. Scott to step outside and arrested him, just outside the front door. They proceeded to conduct a protective sweep of the two-story

2

house, checking all spaces large enough to conceal a person. In the course of that sweep, officers observed additional baggies of marijuana and a handgun on a sofa.

After completing the sweep, one of the arresting officers advised Mr. Scott of his Miranda rights and asked him to sign a consent form to give the officers permission to search his house. At the time, Mr. Scott was handcuffed with his hands in front of his body. After initially indicating he did not think he should sign the form, one of the officers told him to "take [his] time, go ahead and read it again." Mr. Scott read the form a second time and signed the form. In the subsequent search of the house, officers seized marijuana, the handgun located on the sofa, a rifle, and a coffee container filled with marijuana.

Before trial, Mr. Scott filed a motion to suppress the evidence obtained in the search of his house. The district court denied his motions to suppress, concluding that the officer's initial sweep of the house was legal under Marlyand v. Buie, 494 U.S. 325 (1990), and that his subsequent consent to the search of his home was voluntary. This appeal followed.

## II. Standard of Review

"A district court's ruling on a motion to suppress presents mixed questions of law and fact." United States v. Ramirez-Chilel, 289 F.3d 744, 748-49 (11th Cir. 2002). We review "findings of fact for clear error and the application of the law to those facts de novo." United States v. Martinelli, 454 F.3d 1300, 1306 (11th Cir.

3

2006).  In reviewing the district court's ruling, we construe the facts in the light most favorable to the prevailing party below.  United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006).

## III. The Protective Sweep

Mr. Scott challenges the arresting officers' initial protective sweep of his residence.  In Buie, the Supreme Court held that arresting officers do not need a warrant to justify a limited protective sweep of a house incident to an in-home arrest.  The Buie Court recognized two scenarios in which a protective sweep is justified. First, officers can perform a protective sweep of the areas immediately adjoining the place of the arrest, with or without probable cause or reasonable suspicion. Buie, 494 U.S. at 334. Second, officers may conduct a protective sweep of non-adjoining areas of the place of the arrest if they have reasonable suspicion that "the area to be swept harbors an individual posing a danger to those on the arrest scene." Id.

Here, the district court found that the arresting officers asked Mr. Scott to step outside of his home, after which he was arrested. Given that Mr. Scott was arrested outside of his home, the officer's subsequent protective sweep of his home was not justified under Buie absent reasonable suspicion that there were dangerous individuals in the home. See United States v. Archibald, 589 F.3d 289, 297 (6th Cir. 2009) (adopting position of several courts that a sweep incident to an arrest

4

made outside the home requires officers to have reasonable suspicion that there is a dangerous individual in the house); United States v. Henry, 48 F.3d 1282, 1284 (D.C. Cir. 1995)(requiring reasonable suspicion of the presence of a dangerous individual to justify a sweep incident to an arrest made outside of front door); United States v. Oguns, 921 F.2d 442, 446 (2d Cir. 1990)(adopting Buie's reasonable suspicion test for evaluating security sweeps incident to arrests made outside of the home); see also United States v. Kimmons, 965 F.2d 1001, 1009-10 (11th Cir. 1992) vacated on other grounds, 508 U.S. 902 (1993) (holding that protective sweep was justified incident to arrest outside residence where officers had reasonable suspicion that dangerous individuals were in apartment). But the officer's protective sweep in this case was completely unsupported by any suspicion that "the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334. Officers testifying at the suppression hearing could not identify any articulable fact which would lead a reasonable person to believe that another person was home at the time of Mr. Scott's arrest. Arresting officers surveilled Mr. Scott's house before the arrest and did not observe the presence of another individual. The anonymous tip itself could not afford the officers with any reason to believe anyone was in the house, as the tip only mentioned Mr. Scott, who was of no danger to the officers once arrested. The investigating officers' lack of information about whether anyone inside the

house posed any danger cannot be used to justify a protective sweep. See United States v. Chaves, 169 F.3d 687, 692 (11th Cir. 1999)([I]n the absence of specific and articulable facts showing that another individual, who posed a danger to the officers or others, was inside the warehouse, the officers' lack of information cannot justify the warrantless sweep in this case."). As a result, we hold that the district court erred in holding that the protective sweep Mr. Scott's house was justified under Buie.

## IV. The Subsequent Search

Our conclusion that the initial protective sweep of Mr. Scott's house was unconstitutional does not end our inquiry. Because the evidence admitted at trial against Mr. Scott was not seized during the protective sweep, but during the second warrantless search of Mr. Scott's home, we must determine whether this latter search was tainted by the initial constitutional violation. Where a search is made pursuant to consent following prior illegal police activity, we conduct a two-step inquiry to evaluate the constitutionality of the subsequent search. "First, a court must determine whether the consent was voluntary. Second, the court must determine whether the consent, even if voluntary, requires exclusion of the evidence found during the search because it was the 'fruit of the poisonous tree'— the product of an illegal entry." United States v. Delancy, 502 F.3d 1297, 1308 (11th Cir. 2007).

6

First, we consider whether Mr. Scott's consent was given voluntarily. Whether a defendant's consent to search was voluntary is a question of fact to be determined from all of the circumstance. United States v. Garcia, 890 F.2d 355, 358 (11th Cir. 1989). The district court did not clearly err in finding that Mr. Scott's consent to the search of his home was voluntarily given. Although Mr. Scott was handcuffed and under arrest when he consented to the search, these circumstances alone do not mandate a finding of involuntariness. See id. at 362. The evidence at the suppression hearing showed that Mr. Scott's consent was not obtained through coercive or deceptive conduct. Rather, officers obtained Mr. Scott's consent after merely asking him to read the consent form a second time. The fact that Mr. Scott initially refused to consent to the search does not render his subsequent consent voluntary, particularly in the absence of any coercive conduct by the police beyond the coercion inherent in any arrest made pursuant to probable cause.

Because we conclude that Mr. Scott voluntarily gave consent to have his home searched, we consider whether his consent was tainted by the investigating officer's illegal protective sweep of his home. Delancy, 502 F.3d at 1308. We consider three factors when determining whether a voluntary consent was tainted by an initial search: "the temporal proximity of the seizure and the consent, the presence of intervening circumstances, and, particularly, the purpose and flagrancy

7

of the official misconduct." United States v. Santa, 236 F.3d 662, 677 (11th Cir. 2000). "The proper inquiry is not simply whether [Mr. Scott's] will was overborne by the agents' illegal entry, but also whether his consent was a "product" of that illegality." Id.

Considering these factors, we conclude that Mr. Scott's consent was not tainted by the illegal protective sweep of his home. To be sure, Mr. Scott's consent was obtained minutes after the illegal protective sweep was completed. And we recognize that the fact that Mr. Scott was apprised of his right to refuse the search does not constitute an intervening factor sufficient to dissipate the taint of the illegal sweep. Id. at 678 (holding that the reading of Miranda warnings and the signing of a waiver of Fourth and Fifth Amendment rights are not sufficient intervening factors sufficient to dissipate the taint of an unlawful entry into a home). However, the officers' conduct in this case, while illegal, was not flagrant. The district court found that the officers conducted the protective sweep for the purposes of officer safety and not for the purposes of uncovering contraband. The officers' search was limited to spaces that were big enough to conceal a dangerous person and did not extend into smaller drawers, containers, or storage spaces. Arresting officers did not seize any items during their protective search and did not bring any of the illegal items they saw during that search to Mr. Scott's attention. Thus, the arresting officers did not use the fruits of the illegal protective sweep as

8

leverage or as a tool of psychological coercion to persuade Mr. Scott to consent to the search. Instead, the officers only discussed with Mr. Scott the marijuana in plain view of the doorway prior to obtaining his consent to the search of the full house. Given these circumstances, we cannot conclude that Mr. Scott's consent was a product of the officer's illegal protective sweep.

## V. Conclusion

Upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**