55 P.3d 691 (2002)
STATE of Washington, Respondent,
v.
Cheryl L. HOPKINS and Russell Alan Smith, Appellants.
Nos. 20215-1-III, 20320-4-III.
Court of Appeals of Washington, Division 3, Panel Nine.
October 15, 2002.
*692 James E. Egan, Kennewick, WA, for appellants.
Andrew K. Miller, Terry J. Bloor, Prosecuting Attorney's Office, Kennewick, WA, for respondents.
KATO, A.C.J.
Cheryl L. Hopkins and Russell Alan Smith appeal their convictions for manufacturing and possession of methamphetamine. They contend police officers' search of outbuildings on Ms. Hopkins' property exceeded the scope of a lawful protective sweep. We agree and reverse.
On September 22, 2000, about seven Benton County sheriff's deputies went to Ms. Hopkins' rural property to arrest her on outstanding felony warrants. The officers also had with them a search warrant to enter Ms. Hopkins' property "and there diligently *693 search for [her], to include any and all out buildings or trailers located on the property and any document, paperwork, identification cards, mail and/or personal property pertaining to Cheryl Hopkins." Hopkins Clerk's Papers (Hopkins CP) at 174.
Arriving at the scene in four or five patrol cars, the deputies saw two men standing near a shed. One man said something to the other, went inside the shed, and then came back out. Deputy Mike Wilson jumped out of his patrol car, announced that he had a warrant, and officers secured the two men by placing them on the ground in handcuffs. The officers then went to the mobile home where Ms. Hopkins lived and arrested her without incident.
Deputy Wilson and Deputy Jeff Hayter then went into the shed "just to do a security check to make sure there were no other individuals inside." Report of Proceedings (RP) (Feb. 16, 2001) at 9. Deputy Wilson testified:
We wanted to do, for our own security, a security sweep. Methamphetamine, as you know, is a stimulant and people can get, when they get high, can get pretty aggressive and mean. I've seen people that are docile but pretty much aggressive. We have no idea what we're gonna run into gun-wise, you know, with people. So we're gonna go ahead and enter that shed and secure it. We're going specifically in there looking for people.
RP (Feb. 16, 2001) at 10.
Inside the shed, the officers saw a 3-by 5-foot floor freezer, big enough to hide a person inside. One of the officers opened the freezer, smelled ammonia, and saw methamphetamine lab-related items.
Deputy Wilson then testified:
At this point, I went around the back side of the shed where there is a trailer. The door was wide open in the trailer. We decided we better clear that to make sure we don't have additional people. There are people that go to the residence at different times. There is a lot of people and sometimes there is not a lot of people, it just depends what time of day it is. We just decided to go inside the trailer to secure that.
RP (Feb. 16, 2001) at 9-10.
Deputy Hayter testified the sweep was necessary to "make sure that the areas that we were standing directly in front of were clear of any potential threats." RP (Feb. 16, 2001) at 22. When asked to explain what he meant by "potential threats," the deputy testified:
Somebody hiding in one of the sheds. Could be hiding outside in one of the areas beside the shed. There was a lot of just kind of stuff stacked up around this place and there's dog kennels behind the shed and things like that. So just to make sure there was not somebody hiding there that could be a threat to us while we're working on finishing up and leaving [] posting search warrants and things like that.
RP (Feb. 16, 2001) at 22.
Inside the trailer, the officers saw more methamphetamine lab-related items. Based on these observations, the officers applied for and received a telephonic warrant to search for controlled substances and related items.
Ms. Hopkins and Mr. Smith[1] were charged with manufacturing and possession of a controlled substance. The cases were consolidated for trial, and the defendants moved to suppress the evidence. After a CrR 3.6 hearing, the superior court denied the motion, concluding the officers were conducting a valid "protective sweep" when they saw the drug-related items in the shed and trailer.
A jury later convicted Ms. Hopkins and Mr. Smith of both counts.
The dispositive issue is whether the officers' entry into the shed and trailer exceeded the scope of a lawful "protective sweep." Both the federal and state constitutions prohibit unreasonable searches. U.S. CONST. amend. IV; Wash. CONST. art. I, 7.[2] *694 Whether officers acted with a warrant will determine which party bears the burden in evaluating a suppression motion. See State v. Jackson, 82 Wash.App. 594, 602-03, 918 P.2d 945 (1996), review denied, 131 Wash.2d 1006, 932 P.2d 644 (1997). If the officers acted without a valid warrant, the State bears the burden of establishing a search was reasonable. Id. If the officers had a warrant authorizing the search, the defendant bears the burden of establishing the search was unreasonable. Id.
Here, the State points out that its officers had a valid warrant to search "all out buildings or trailers located on the property." Hopkins CP at 174. But it is undisputed that the only basis for issuing the search warrant was the outstanding arrest warrants for Ms. Hopkins. Why the officers obtained a search warrant is not clear, because an arrest warrant, by itself, provides authority for the police to enter a person's residence to effectuate his or her arrest. See Payton v. New York, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."); see also RCW 10.31.040 ("To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building ... if, after notice of his office and purpose, he be refused admittance.").
Because the search warrant was issued only on the basis of the probable cause to arrest Ms. Hopkins, the search warrant's authority to search logically extends only to the areas authorized by the arrest warrants. To the extent the search warrant here authorized a search more extensive than permitted by the arrest warrants, it was invalid.
The State does not contend the arrest warrants alone justified the officers' entry into the shed and trailer. The burden therefore shifts to the State to establish the entry was nevertheless reasonable. See Jackson, 82 Wash.App. at 602-03, 918 P.2d 945.
To satisfy this burden, the State contends the entry was a lawful "protective sweep" of the premises incident to Ms. Hopkins' arrest. While making a lawful arrest, officers may conduct a reasonable "protective sweep" of the premises for security purposes. Maryland v. Buie, 494 U.S. 325, 334-35, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). The scope of such a "sweep" is limited to a cursory visual inspection of places where a person may be hiding.[3]Id. at 334, 110 S.Ct. 1093. If the area immediately adjoins the place of arrest, the police need not justify their actions by establishing a concern for their safety. Id. However, when the "sweep" extends beyond this immediate area, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonable and prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id.
The State does not contend the shed and trailer were within the area immediately adjacent to the place where Ms. Hopkins was arrested. The issue, then, is whether, pursuant to Buie, the officers reasonably believed the shed and trailer harbored dangerous persons. Although the presence of the two men outside the shed may have posed a danger when the officers first arrived at the scene, those men and Ms. Hopkins had been secured *695 before the "sweep" began. They thus no longer posed a danger to the arresting officers. See United States v. Henry, 48 F.3d 1282, 1284 (D.C.Cir.1995) (suspect in custody no longer a threat to police).
The only remaining possibility is that the officers feared that other, dangerous persons were in the shed or trailer. But a "general desire to be sure that no one is hiding in the place to be searched is not sufficient" to justify a protective sweep outside the immediate area where an arrest has occurred. State v. Schaffer, 133 Idaho 126, 131, 982 P.2d 961 (Idaho App.1999); see United States v. Ford, 56 F.3d 265, 270 (D.C.Cir.1995); Runge v. State, 701 So.2d 1182, 1186 (Fla.App.1997); Earley v. State, 789 P.2d 374, 377 (Alaska App.1990). Deputies Wilson and Hayter entered the shed "to make sure there were no other individuals inside." RP (Feb. 16, 2001) at 9. While the officers understood generally that methamphetamine users can be aggressive, the State presented no facts that would have led them reasonably to believe both that other persons actually were present and that those persons were methamphetamine users.[4] Indeed, the facts suggest the deputies did not have even a subjective fear that other, dangerous persons were in the shed or trailer: One officer was left to watch the two men, who were being restrained near the shed, while the remaining six went to Ms. Hopkins' residence to arrest her.
The officers did not have a reasonable belief that the shed or the trailer harbored a dangerous person. The search of those areas thus was not a lawful "protective sweep" under Buie. Evidence seized as a result of the unlawful search should have been suppressed. The superior court's order is reversed.[5]
WE CONCUR: SWEENEY, and KURTZ, JJ.
NOTES
[1] Mr. Smith was one of the two men the officers saw outside the shed. The other man, Michael A. Couey, also was charged. The disposition of his case is not at issue in this appeal.
[2] The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. The Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. Ms. Hopkins and Mr. Smith do not contend the state provision provides greater protection in this area than does the federal provision, and they have cited only authorities interpreting the federal provision. The analysis here thus is limited to the defendants' federal constitutional rights.
[3] Buie specifically addressed an arrest inside a person's home, but other courts have expanded its rationale to areas just outside a residence. See United States v. Henry, 48 F.3d 1282, 1284 (D.C.Cir.1995). The State has provided no authority that a "protective sweep" under Buie may extend into separate structures, as in this case. See State v. Schaffer, 133 Idaho 126, 132, 982 P.2d 961 (1999) ("[W]e have been referred to no decision where [the Buie rationale] has been extended to include an entirely separate structure as the State urges here."). In light of our decision, we need not address this issue.
[4] The circumstances thus were substantially different from those in Henry, in which the officers had been warned that the arrestee may have been accompanied by other, armed persons. Henry, 48 F.3d at 1284.
[5] Our decision makes it unnecessary to address the remaining issues. We reject the defendants' request that we dismiss the prosecutions on various constitutional grounds.