FILED
COURT OF APPEALS
DIVISION II

2015 FEB -3 AM 8: 54

STATE OF WASHINGTON
No. 44870-0-II
BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | |
| v. | |
| JOSE R. GERMAN, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Jose German appeals from his jury trial convictions for assault in the second degree with a firearm enhancement, vehicle prowling in the second degree, and unlawful possession of a firearm in the first degree. German argues that evidence seized from his home pursuant to a search warrant should have been excluded at trial because it was the fruit of an unlawful entry by police, and the trial court erred by giving the jury an "abiding belief" instruction. In his statement of additional grounds (SAG), German further argues that the trial court abused its discretion by not allowing him to refer to a shooting by police in California, that his trial counsel was ineffective for a variety of reasons, that the trial court abused its discretion by failing to admonish the prosecutor for his closing argument, and that his appellate counsel is ineffective for failing to brief ineffective assistance of trial counsel. We reject all of German's claims and affirm the trial court.

## FACTS

In early spring 2012, a "string of break-ins" occurred in the parking lot of Charley's Pub in Fircrest. Report of Proceedings (RP) (Feb. 14, 2013) at 296. Charley's hired Frank James and Noah Frampton to patrol its lot. One evening, James and Frampton noticed an unlocked car containing a purse. Ten or fifteen minutes later, James and Frampton saw a pair of men leaning

inside the car. When the men saw James and Frampton, they began to walk away. James told them not to come back.

The two men turned around and shouted an obscenity. One of the two pulled out a pistol. He said "I have something for you, big boys," cocked the gun, and aimed it in the security guards' direction. RP (Feb. 14, 2013) at 303. James and Frampton retreated and called the police.

Police officers were dispatched to Charley's where James and Frampton described the suspects as a white male and a Hispanic male, both wearing white T-shirts and blue jeans, who had gone southbound, and who were armed. A couple of blocks southeast of Charley's, Officer Christopher Roberts found German and his eventual co-defendant, Manuel Urrieta, leaning into a car that had its hood up. German and Urrieta were wearing white T-shirts and blue jeans. When Officer Roberts called out to the two men, they ran into a nearby apartment and slammed the door.

Officer Roberts believed that German and Urrieta had entered a home which did not belong to them. Officer Roberts kicked down the door and ordered German and Urrieta to show him their hands. When German and Urrieta did not comply, Officer Roberts shot them.

The police called for an ambulance. After checking for other individuals inside the apartment, the police left the premises and waited for a search warrant. Subsequently, the police searched the apartment pursuant to a warrant and discovered a gun, ammunition, and letters addressed to German. Frampton later identified German as the gunman from a photographic montage.

## PROCEDURAL HISTORY

The State charged German with two counts of assault in the second degree with a firearm enhancement,[1] one count of vehicle prowling in the second degree,[2] and one count of unlawful possession of a firearm in the first degree.[3]

German moved under CrR 3.6 to suppress the firearm discovered in his residence. He argued that Officer Roberts had entered his home unlawfully and everything that the police discovered thereafter was the fruit of the poisonous tree.[4] Because German agreed that there were no disputed facts, the trial court did not hold an evidentiary hearing. The trial court heard legal argument and then denied German's motion. Based on the undisputed facts the parties presented, the trial court entered the following oral findings of fact:[5] (1) that the police were investigating the crime of assault with a firearm; (2) that the suspects were reasonably believed to be armed; (3) that the police had reasonably trustworthy information, based on eyewitness statements; (4) that there was a strong reason to believe the suspects were still on the property; (5) that the suspects were likely to escape if not apprehended; (6) that the entry was not peaceable but was justified under the circumstances; (7) that the entry was at night; and (8) that the investigation was not part of a planned operation or ongoing investigation.

---

[1] RCW 9A.36.021(1)(c); RCW 9.94A.533.

[2] RCW 9A.52.100(1), (2).

[3] RCW 9.41.040(1)(a).

[4] The record on appeal does not contain German's motion or the trial court's order.

[5] The trial court asked the prosecutor to draft written findings of fact and conclusions of law, but these do not appear in the appellate record.

German went to trial. Over German's objection, the trial court instructed the jury that reasonable doubt required "an abiding belief in the truth of the charge." Clerk's Papers (CP) at 107; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3rd ed. 2008). The jury convicted German of all the charged offenses and the enhancement. German appeals.

## ANALYSIS

### I.  MOTION TO SUPPRESS

German argues that the firearm seized pursuant to the search warrant for his home should have been excluded as the fruit of an unlawful entry by police. The State argues that German failed to preserve the issue because he failed to challenge the search warrant itself. Alternatively, the State argues that Officer Roberts's warrantless entry was permitted under the doctrine of exigent circumstances. As the State points out, German does not challenge the search warrant itself. In fact, it has not been made a part of the appellate record. Therefore, we do not review the warrant's legality. To the extent German challenges his arrest, we hold that Officer Roberts both lawfully entered German's residence and arrested German. We affirm the trial court.

"Unchallenged findings of fact entered following a suppression hearing are verities on appeal." *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). Neither party assigns error to the findings of fact, so we take them to be true.[6] "We review a trial court's conclusions of law in an order pertaining to suppression of evidence de novo." *State v. Carneh*, 153 Wn.2d 274, 281, 103 P.3d 743 (2004).

---

[6] Although the record on appeal contains no written findings of fact, the trial court entered oral findings of fact. We take the trial court's oral findings as true because neither party disputes the facts in this case.

The state and federal constitutions prohibit warrantless searches of homes unless they fall within a well-delineated exception. *State v. Leach*, 113 Wn.2d 735, 738, 782 P.2d 1035 (1989); U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."); WASH. CONST. art. I, § 7 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law."). But when the police make a warrantless entry justified by exigent circumstances and evidence is discovered only after a search warrant is issued, then the trial court does not err by admitting the evidence. *State v. Terrovona*, 105 Wn.2d 632, 645, 716 P.2d 295 (1986).

We use six factors to determine whether a warrantless police entry into a home is justified:

> "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) whether there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry [can be] made peaceably."

*State v. Smith*, 165 Wn.2d 511, 518, 199 P.3d 386 (2009) (quoting *State v. Cardenas*, 146 Wn.2d 400, 406, 47 P.3d 127, 57 P.3d 1156 (2002)). This totality of the circumstances test does not require that each factor be satisfied. Circumstances may still be exigent and justify a warrantless search even if they do not satisfy every one of the elements listed above. *Smith*, 165 Wn.2d at 518. All warrantless entries of a home are presumptively unreasonable, and the State bears the "heavy burden" of proving that exigent circumstances necessitated the entry. *State v. Hinshaw*, 149 Wn. App. 747, 754, 205 P.3d 178 (2009).

Here, the unchallenged findings of fact support the trial court's conclusion that Officer Roberts lawfully entered German's home without a warrant. Officer Roberts was investigating a crime of violence. James and Frampton had been threatened with a gun. Officer Roberts reasonably believed the suspect to be armed, because moments before he had been seen with a

5

gun. Officer Roberts had reasonably trustworthy information to believe that German and Urrieta were guilty, because they matched the description of the individuals who had threatened James and Frampton. Furthermore, German and Urrieta were found a short distance south of Charley's, the direction that the suspects had fled. German and Urrieta were also engaged in the same conduct that the suspects had been; they were prowling a car and retreated when challenged by a third party. Officer Roberts knew that German and Urrieta were on the premises, because he saw them run into the apartment. German and Urrieta were likely to escape if not swiftly apprehended; they could have exited through the back of the apartment. It is also worth noting that Officer Roberts believed German and Urrieta had entered someone else's apartment, and posed a danger to whomever might be inside.

It is true that Officer Roberts's entry was not peaceable, but "it is not necessary that every factor be met to find exigent circumstances, only that the factors are sufficient to show that the officers needed to act quickly." *Cardenas*, 146 Wn.2d at 408. Here, the unchallenged findings of fact clearly indicate that Officer Roberts reasonably believed German and Urrieta were the suspects in a crime of violence, that they posed a continuing danger, and that he needed to act quickly in order to apprehend them. We hold that Officer Roberts's entry was justified by exigent circumstances, and the search warrant for German's apartment was not the fruit of an unlawful entry. Because German does not challenge the search warrant, the firearm discovered pursuant to the warrant is admissible under *Terrovona*, and we affirm the trial court. *See* 105 Wn.2d at 645.

## II. ABIDING BELIEF INSTRUCTION

German argues that the trial court erred by instructing the jury using the "abiding belief" language because it misstated the jury's role as a search for the truth.[7] We reject German's claims and affirm the trial court.

Jury instructions, taken in their entirety, must inform the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). It is reversible error to instruct the jury in a manner that would relieve the State of this burden. *Pirtle*, 127 Wn.2d at 656. We review a challenged jury instruction de novo, evaluating it in the context of the instructions as a whole. *Pirtle*, 127 Wn.2d at 656.

The instruction at issue here has never been held to be improper. To the contrary, our Supreme Court has directed that trial courts use the instruction given in this case. *State v. Bennett*, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007).

German argues that this instruction improperly suggests that the jury's role is to determine the truth, rather than to test the State's evidence. *See State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012) ("The jury's job is not to determine the truth of what happened; a jury therefore does not 'speak the truth' or 'declare the truth.'") (quoting *State v. Anderson*, 153 Wn. App. 417, 429, 220 P.3d 1273 (2009)). The instruction here does not tell the jury to find the truth; it tells the jury to acquit the defendant *unless* the government convinces the jury of the truth of the charge. The purpose of the "abiding belief" language is not to recast the government's burden, but to underscore the certainty that the jury must have in order to convict the defendant. *Victor v. Nebraska*, 511 U.S. 1, 14-15, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994); *Hopt v. Utah*, 120 U.S.

---

[7] The court used the standard WPIC 4.01 "Beyond a Reasonable Doubt" instruction.

430, 439, 7 S. Ct. 614, 30 L. Ed. 708 (1887) ("The word 'abiding' here has the signification of 'settled and fixed,'-a conviction which may follow a careful examination and comparison of the whole evidence."). Although the "abiding belief" language may not add substantively to WPIC 4.01, neither does it "diminish the definition of reasonable doubt." *Pirtle*, 127 Wn.2d at 658.

The trial court properly instructed the jury.

III. STATEMENT OF ADDITIONAL GROUNDS

German alleges several additional errors in his SAG. We reject his claims and affirm the trial court.

A. Pretrial Order Against Analogies

German asserts that the trial court abused its discretion by barring him from referring to an incident in which the police shot two innocent people in California. We disagree.

Prior to trial, the State moved to exclude any "comparisons, analogies to any incident that has occurred other than the one in question." RP (Feb. 13, 2013) at 132. Specifically, the State sought to prevent German from referring to "these officers that apparently shot and killed two, as it turns out, innocent people down in Southern California." RP (Feb. 13, 2013) at 132. The trial court granted the motion, ruling that "I don't see any analogy between what occurred in this recent case down in California with the pick-up truck that was being shot and what occurred in this particular case. . . . The focus should be on what occurred in this particular case, and I think that this can be argued without making references to a highly-charged situation down in California, which nobody really knows what occurred or why the officer shot, what provoked him." RP (Feb. 13, 2013) at 138-39.

8

We review a trial court's ruling restricting the scope of argument for abuse of discretion. *State v. Hughes*, 118 Wn. App. 713, 726, 77 P.3d 681 (2003). A trial court abuses its discretion only when "no reasonable person would take the view adopted by the trial court." *State v. Castellanos*, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997).

German complains that he was not allowed to rely on analogies while the prosecution was allowed to analogize to fictional scenarios, such as police procedural shows on television. German also makes unsubstantiated claims that the prosecutor analogized Officer Roberts's shooting of German and Urrieta to "hunting." SAG at 3. But a reasonable judge could have permitted the prosecution's analogies while barring German's because German sought to make use of a real, highly charged, and irrelevant situation. Officer Roberts was not involved in the shooting that German sought to reference. Nor were the circumstances of the shooting known with any certainty. Furthermore, the California shooting was a high-profile media case. For German to raise this case in his argument to the jury would have invited speculation and created a risk that the jury would make a decision based not on the facts before them, but on what they believed happened elsewhere. The trial court did not abuse its discretion by limiting German's argument to his actual facts. We reject German's claim.

B.      Ineffective Assistance of Trial Counsel

German asserts that his trial counsel was ineffective for failing to request severance or a mistrial, failing to request a lesser included instruction, failing to challenge the search warrant, and failing to object to the prosecutor's closing argument. We reject his claims.

### 1.    Standard of Review

Ineffective assistance of counsel is a mixed question of law and fact that is reviewed de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). Ineffective assistance of counsel may be analyzed for the first time on appeal if the defendant can show a manifest constitutional error. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009); RAP 2.5(a)(3).

To establish ineffective assistance of counsel, the defendant must prove both that the attorney's performance was deficient and that the deficiency prejudiced the defendant. *Kyllo*, 166 Wn.2d at 862 (citing *Strickland v. Washington*, 466 U.S 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Deficient performance prejudices a defendant if there is a "reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862.

There is a strong presumption that counsel's performance was reasonable. *Kyllo*, 166 Wn.2d at 862. Counsel's performance is not deficient if it can be characterized as legitimate trial strategy or tactics. *Kyllo*, 166 Wn.2d at 863.

### 2.    Severance/Mistrial

German asserts that his counsel should have moved for severance or a mistrial owing to a conflict with his co-defendant, Urrieta. "Separate trials have never been favored in this state." *State v. Grisby*, 97 Wn.2d 493, 506, 647 P.2d 6 (1982) (quoting *State v. Herd*, 14 Wn. App. 959, 963 n.2, 546 P.2d 1222 (1976)). The trial court has broad discretion to grant or deny a severance, and the defendant bears the burden to come forward with sufficient facts to warrant the exercise

of discretion in his favor. *Emery*, 174 Wn.2d at 752. We do not disturb a trial court's decision to grant or deny a severance absent a manifest abuse of discretion. *Emery*, 174 Wn.2d at 752. Even if German's counsel had moved for severance, it is unlikely German would have received it.

German argues that he and Urrieta should have been tried separately because Urrieta's theory at trial was that German was the main perpetrator. But we "set a high bar for granting severance," and it is not enough that the co-defendants implicate each other. *State v. Sublett*, 176 Wn.2d 58, 69, 292 P.3d 715 (2012). Rather, "[t]he conflict must be so prejudicial that the two defenses are irreconcilable, such that the jury will unjustifiably infer that the conflict alone demonstrates that both defendants are guilty." *Sublett*, 176 Wn.2d at 69. In contrast, if "[t]he jury could have believed either or neither defendant," then severance is not warranted. *Sublett*, 176 Wn.2d at 69.

Here, the jury could have believed either or neither of German's and Urrieta's stories. In fact, the jury acquitted Urrieta, indicating that they believed him and not German. The jury did not infer that the conflict demonstrated both German's and Urrieta's guilt, and German was not entitled to severance. German's counsel was not ineffective for making a motion that would have been denied.

Nor was German entitled to a mistrial. "The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." *Emery*, 174 Wn.2d at 765. As the above analysis shows, German was not prejudiced by his joint trial with Urrieta. Any motion for a mistrial would have been futile, and German's counsel was not ineffective for failing to make the motion. We reject German's claim.

### 3. Lesser Included Instruction

German asserts that his counsel should have moved for an instruction on the lesser included offense of unlawful display of a weapon.[8] The Washington Supreme Court has held that the "all or nothing" approach is a legitimate trial tactic, and that it is not ineffective assistance to fail to request a lesser included offense instruction. *State v. Grier*, 171 Wn.2d 17, 20, 44, 246 P.3d 1260 (2011).

Furthermore, any error by counsel was not prejudicial because German was not entitled to this lesser included offense instruction. A trial court must give a lesser included offense instruction when two elements are met: First, each element of the lesser offense must be an element of the charged offense, and second, the evidence must support an inference that the lesser crime was committed *instead* of the charged offense. *State v. Karp*, 69 Wn. App. 369, 375-76, 848 P.2d 1304 (1993).

A charge of assault in the second degree requires the State to prove that German used a deadly weapon to "'put[ ] another in apprehension of harm.'" *State v. Byrd*, 125 Wn.2d 707, 712, 887 P.2d 396 (1995) (quoting *State v. Frazier*, 81 Wn.2d 628, 631, 503 P.2d 1073 (1972)). In contrast, unlawful display of a weapon only requires that a person "carry, exhibit, display, or draw any firearm . . . or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons." RCW 9.41.270(1).

The evidence does not show that German committed unlawful display of a weapon *instead of* assault in the second degree. German not only displayed the gun, but pointed it at James and Frampton and said that the gun was "for" them. RP (Feb. 14, 2013) at 303. German not only

---

[8] RCW 9.41.270.

intimidated the two men, but put them in apprehension of harm. A motion for a lesser included instruction would have been futile, and German's trial counsel was not ineffective for failing to request it.

### 4. Search Warrant

German asserts that his trial counsel should have challenged the search warrant for his apartment. Where a search warrant is issued, the defendant bears the burden of challenging the warrant and establishing that the search was unlawful. *State v. Hopkins*, 113 Wn. App. 954, 958, 55 P.3d 691 (2002).

German offers no reason why the warrant was invalid, other than Roberts's warrantless entry into the apartment. As described above, Roberts's warrantless entry was justified by exigent circumstances. No evidence was discovered in the interim between Roberts's warrantless entry and the issuance of the search warrant. For the reasons we have previously explained, we reject his claim.

### 5. Failure to Object

German asserts that his trial counsel was ineffective for failing to object to the prosecutor's argument referencing the "abiding belief" instruction. We reject his claim.

As discussed above, the "abiding belief" instruction properly states the nature of the government's burden. WPIC 4.01, at 85. The instruction does not minimize the government's burden, or recast the jury's role as a search for the truth. Accordingly, the prosecutor's argument was proper and counsel's objection would have been futile. German's claim fails.

### C. Prosecutorial Misconduct

German asserts that the trial court abused its discretion by failing to admonish the prosecutor's argument referencing the "abiding belief" instruction. As described above, the

"abiding belief" instruction was not improper, and the prosecutor did not commit misconduct by referencing that instruction. The trial court did not abuse its discretion, and German's claim fails.

####    D.    Ineffective Assistance of Appellate Counsel

German asserts that his appellate counsel was ineffective for raising frivolous issues and failing to raise the issues German raises in his SAG. To prevail on an ineffective assistance of appellate counsel claim, the appellant must demonstrate merits of issues that counsel failed to argue or argued inadequately. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 314, 868 P.2d 835 (1994), *cert. denied*, 513 U.S. 849 (1994). As discussed above, all of German's SAG issues are without merit. Thus, we hold that German's appellate counsel did not render ineffective assistance by failing to raise those issues in the appellant's brief.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.


_____
Bjorgen, A.C.J.