GORDON McCLOUD, J. (concurring)
¶ 23 According to the trial court's unchallenged findings of fact, Patricia Burton consented to the search of her apartment. Her consent provided the officers with the authority to conduct a warrantless search. I therefore agree with the majority's decision to affirm the trial court's order denying Hollis Blockman's motion to suppress evidence discovered during that search.
*661 ¶ 24 The majority also correctly observes that the parties did not present the issue of consent, but instead briefed the applicability of Buie[1] protective sweeps incident to arrest to a nonarrest context. I agree with its description of the conflicting lines of authority on that issue. I write separately only to explain that the legal principles and privacy values identified by the majority compel a single resolution of that Buie issue: Buie protective sweeps are impermissible when police enter based on the consent exception to the search warrant requirement. The reason is that-as the majority recognizes-the key attribute of the consent exception to the warrant requirement is that the consentee defines the scope of that consent.
¶ 25 I therefore respectfully concur.
ANALYSIS
I. Burton consented to the search of her apartment
¶ 26 The police did not have a warrant to search Burton's apartment. This court has repeatedly held, " ' "As a general rule, warrantless searches and seizures are per se unreasonable." ' " State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999) (quoting State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996) (quoting State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980) ) ). Thus, the first question in this case is whether one of the few, limited, and carefully defined exceptions to the warrant requirement permitted the search that led to Blockman's arrest.[2]
¶ 27 I agree with the majority that Burton consented to the search of her apartment. This court recognizes lawful *662 consent as one of the few exceptions to the warrant requirement. State v. Mathe, 102 Wash.2d 537, 541, 688 P.2d 859 (1984) ("Consent to a search *1201 establishes the validity of that search if the person giving consent has the authority to so consent."); see also Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed. 2d 854 (1973). As discussed by the majority, there are three requirements for a valid consensual search: (1) the consent must be voluntary, (2) the consent must be granted by a party having authority to consent, and (3) the search must be limited to the scope of the consent granted. Majority at 1199 (citing State v. Hastings, 119 Wash.2d 229, 234, 830 P.2d 658 (1992) ). While there was contradictory testimony presented at the CrR 3.6 hearing, neither party challenged the trial court's ultimate finding that Burton consented to both the entry into and the sweep of the apartment.[3]
¶ 28 Burton, however, had the right to limit her consent and define the scope of any consent search. See State v. Bustamante-Davila , 138 Wash.2d 964, 981, 983 P.2d 590 (1999) ("To be valid, the consent must be voluntary and the search must not have exceeded the scope of consent." (citing Hastings, 119 Wash.2d at 234, 830 P.2d 658 ) ). And she did, by repeatedly affirming her consent to the officers' presence in her apartment and to the sweep conducted.[4] Therefore, I agree with the majority's conclusion that Burton consented to the search of her entire apartment and hence that the evidence obtained during that search was admissible.
*663 II. Buie protective sweeps cannot be used in cases where the consent exception to the warrant requirement is used for entry
¶ 29 The majority continues that officers cannot conduct "protective sweeps" as "standard procedure," majority at 1199, any time they enter a home. I agree. This limitation on such sweeps and searches is critical where, as here, entry is based on consent. There are two reasons for this: first, Buie ' s exception to the warrant requirement did not extend that far (Section A, infra ); and second, the consent exception to the warrant requirement is based on the rule that the consentee gets to limit the scope of his or her consent (Section B).
A. The Buie Court's holding was limited to protective sweeps in the incident-to-arrest situation
¶ 30 Buie defines the United States Supreme Court's protective sweep doctrine in a very limited way as follows:
[A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. This is no more and no less than was required in Terry and Long, and as in those cases, we think this balance is the proper one.
494 U.S. at 334, 110 S.Ct. 1093 (emphasis added). Thus, this Buie exception provides for two types of searches-but both are "incident to ... arrest."
¶ 31 The first type is a quick "look"-with no probable cause or reasonable suspicion requirement-into spaces immediately adjoining the place of arrest that could conceal a person. That one is not at issue here.
*664 ¶ 32 The second type is a broader sweep for persons if the Terry and Long prerequisites are satisfied.[5] Those Terry and Long *1202 prerequisites require that a rational, fact-based inference can be made by a reasonably prudent officer that a dangerous individual is present. Buie, 494 U.S. at 325, 110 S.Ct. 1093 ; see also Long, 463 U.S. at 1050, 103 S.Ct. 3469 (" '[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " (alteration in original) (quoting Terry, 392 U.S. at 27, 88 S.Ct. 1868 ) ). That is the one the State argued in this case.
¶ 33 But the Buie Court limited both types of searches incident to arrest-the "look" and the broader "sweep"-to the context of an in-home arrest because "[t]he risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter." 494 U.S. at 333, 110 S.Ct. 1093 (emphasis added). Despite this danger, the United States Supreme Court still kept the parameters of such a protective sweep narrow by holding that "[a] 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officer or others." Id. at 327, 110 S.Ct. 1093. Thus, Buie's exception to the warrant requirement for searches "in the home" is limited to searches that are "incident to arrest" and that also satisfy Terry and Long.
¶ 34 Nevertheless, there is substantial debate throughout state and federal courts about Buie's implications for sweeps without arrests. The Ninth[6] and Tenth Circuits[7] *665 have held that Buie protective sweeps must be incident to arrest. If we were to reject that line of decisions and instead hold that Buie protective sweeps can be incident to limited consent to enter, we would be giving Washingtonians less privacy protection in our state courts than they enjoy in our local federal courts. That can't be right: the Washington Constitution is more protective, not less protective, of our individual privacy rights than the federal constitution. State v. Hinton, 179 Wash.2d 862, 868, 319 P.3d 9 (2014) ("It is well established that article I, section 7 is qualitatively different from the Fourth Amendment and provides greater protections." (citing State v. Athan, 160 Wash.2d 354, 365, 158 P.3d 27 (2007) ); State v. O'Neill, 148 Wash.2d 564, 584, 62 P.3d 489 (2003) ; State v. Jackson, 150 Wash.2d 251, 259, 76 P.3d 217 (2003) ).
¶ 35 On the other hand, other circuits have stated that although the Buie decision arose from a sweep incident to arrest, nothing in Buie stated that a protective sweep would be *1203 unconstitutional if officers were in the residence for some other lawful reason. United States v. Gould, 364 F.3d 578, 581 (5th Cir. 2004) (en banc), abrogated in part on other *666 grounds by Kentucky v. King, 563 U.S. 452, 464, 131 S.Ct. 1849, 179 L.Ed. 2d 865 (2011).[8]
¶ 36 Division One's decision in this case, State v. Blockman, created a similar split within the Washington Courts of Appeals over the Buie "protective sweep" prerequisites. 198 Wash. App. 34, 40, 392 P.3d 1094, review granted, 188 Wash.2d 1014, 396 P.3d 341 (2017). Divisions Two and Three have limited the Buie protective sweep exception to the search-incident-to-arrest context.[9] Pre- Blockman , Division One had explicitly stated that protective sweeps are limited *667 to searches incident to arrest, stating that "[h]ere, the deputies did not arrest Dennis before the protective sweep. Thus, the threshold requirement of a protective sweep is not met under the circumstances of this case." ( State v. Dennis, No. 70262-9-I, slip op. at 9, 2014 WL 3843781 at *4 (Wash. Ct. App. Aug. 4, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/702629.pdf).[10]
¶ 37 Division One's decision in Blockman, which extended Buie protective sweeps to the nonarrest situation, conflicts with all of those prior Court of Appeals cases. 198 Wash. App. 34, 392 P.3d 1094. In fact, Division One's Blockman opinion relied entirely on selected federal cases and did not cite (either approvingly or disapprovingly) to Division Two's or Three's or its own prior treatment of Buie protective sweeps.[11]
*1204 ¶ 38 The leading and controlling federal case on this issue, though, is Buie. And the "protective sweep" employed in this case goes far beyond the incident to arrest sweep approved in Buie. This is impermissible. We have repeatedly stated that " ' "[a]s a general rule, warrantless searches and seizures are per se unreasonable." ' " Ladson, 138 Wash.2d at 349, 979 P.2d 833 (quoting Hendrickson, 129 Wash.2d at 70, 917 P.2d 563 (quoting Houser, 95 Wash.2d at 149, 622 P.2d 1218 ) ). The few, limited, preexisting *668 exceptions to the warrant requirement form a finite list: "[e]xceptions to the warrant requirement fall into several broad categories: consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view, and Terry investigative stops." Id. at 349-50, 979 P.2d 833 (citing Hendrickson, 129 Wash.2d at 71, 917 P.2d 563 (citing Robert F. Utter, Survey of Washington Search and Seizure Law: 1988 Update, 11 U. PUGET SOUND L. REV. 411, 528-80 (1988) ) ); see also Charles W. Johnson & Debra L. Stephens, Survey of Washington Search and Seizure Law: 2013 Update, 36 SEATTLE U. L. REV. , at i, 1713 (2013). Expansions beyond Buie's protective sweep incident to arrest to the limited consent-to-enter context are not included in this list.
¶ 39 In fact, we have already implicitly rejected such an expansion of the Buie protective sweep exception. In State v . Eserjose , officers-acting on a tip that James Eserjose and Joseph Paragone were responsible for a robbery-went to the suspect's house at 1:30 a.m. without a warrant. 171 Wash.2d 907, 910, 259 P.3d 172 (2011) (lead opinion). When Eserjose answered the door, the officers asked if Paragone was home. Eserjose responded that Paragone was upstairs and that he would go get Paragone. Eserjose then went upstairs, leaving the door open. Eserjose's father invited the officers into the house, saying he wanted to close the door to keep out the cold air. The officers stood at the entryway for a minute, but eventually decided to go upstairs and arrest Paragone and Eserjose. Id. The trial court's conclusions of law stated that this was an unconstitutional arrest-that the officers had probable cause to arrest Paragone and Eserjose, but that going upstairs impermissibly exceeded the scope of consent-and the State did not challenge this conclusion on appeal.[12] Id. at 911, 259 P.3d 172. This court accepted the trial court's conclusion of law and analyzed the admission of Eserjose's subsequent confession-agreeing with the trial *669 court that "the arrest was unlawful."[13] Id. at 912, 930 (Madsen, C.J., concurring) ("any illegality occurred when the deputies exceeded the scope of Eserjose's father's consent and went upstairs"), 935, 259 P.3d 172 (C. Johnson, J., dissenting) ("the constitutional violation here is not at issue"). If this court were to accept the state's argument that Buie "protective sweeps" could be expanded to include searches incident to a limited consent to enter, it would essentially overrule Eserjose .
B. The Buie Court did not disturb the rule that one, like Burton, who gives officers consent to enter or search retains the right to define the scope of that consent
¶ 40 Such an expansion would also conflict with the rule that the scope of a consent to enter or search must be strictly respected. Under controlling law of this court, Burton, like all home residents, had the right to define the scope of her consent to enter or search. We have explicitly held that "[a] search exceeding the scope of consent is invalid." Bustamante-Davila, 138 Wash.2d at 982, 983 P.2d 590 (citing State v. Murray, 84 Wash.2d 527, 527 P.2d 1303 (1974) ). And as discussed above, in Eserjose , we have applied this general rule to a factual setting analogous to the one presented here-we stated *1205 that the arrest that occurred when the officers in that case entered pursuant to consent, but then exceeded the scope of consent by going upstairs to conduct a sweep for persons was unconstitutional. See supra pp. ---- - ----.
¶ 41 Allowing Buie protective sweeps after police obtain limited consent to enter would deprive the consentee-in this case, Burton-of her constitutional right to retain control of the scope of her consent.
*670 ¶ 42 Federal courts have similar concerns with such an expansion of Buie. The Second Circuit has stated, "[W]hen police have gained access to a suspect's home through his or her consent, there is a concern that generously construing Buie will enable and encourage officers to obtain that consent as a pretext for conducting a warrantless search of the home." United States v. Gandia, 424 F.3d 255, 262 (2d Cir. 2005). That Gandia court further explained,
"[P]rotective sweeps following a consent entry may in certain circumstance pose Fourth Amendment concerns not present in cases where the initial entry is pursuant to a warrant. For example, concerns might arise respecting a consent to entry requested for a stated common purpose but actually intended not for that purpose but rather for the purpose of gaining access in order to then make a protective sweep of the entire home for unrelated reasons and thus circumvent the warrant requirement."
Id. at 262-63 (alteration in original) (quoting Gould, 364 F.3d at 589 ). Our controlling decisions holding that the consentee gets to control the scope of consent given solves that problem.
C. Any potential danger to the officers could have been resolved without eroding Burton's right to define the scope of consent
¶ 43 Unlike in Buie, the Blockman officers did not face the same disadvantage of being on their "adversary's 'turf' " at an arrest scene. Buie, 494 U.S. at 333, 110 S.Ct. 1093. As the Second Circuit noted in a similar case, "Indeed, the entrance or hallway of the building, or their own police vehicle, would have fulfilled their stated purposes." Gandia, 424 F.3d at 263. Had the officers felt concerned for their safety in Burton's home, they could have interviewed Burton in a number of different locations, rather than use a Buie *671 protective sweep. Or, as in this case, the officers could have asked for and received permission to search.[14]
CONCLUSION
¶ 44 I agree with the majority that the trial court correctly denied the motion to suppress because Burton consented to the officers' entry into and sweep of her home. I also agree with its decision to decline the State's invitation to hold that the Buie exception to the warrant requirement should be expanded to conflict with controlling case law holding that a consentee retains the ability to define the scope of his or her consent to enter or search.
¶ 45 I therefore concur.
Wiggins, J.

Maryland v. Buie , 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed. 2d 276 (1990).

See Arkansas v. Sanders, 442 U.S. 753, 759-60, 99 S.Ct. 2586, 61 L.Ed. 2d 235 (1979) ("[B]ecause each exception to the warrant requirement invariably impinges to some extent on the protective purpose of the Fourth Amendment, the few situations in which a search may be conducted in the absence of a warrant have been carefully delineated and 'the burden is on those seeking the exemption to show the need for it.' ") (quoting United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951), abrogated by California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed. 2d 619 (1991) ).

See Clerk's Papers at 251-52 (Findings of Fact).

See, e.g., 1 Verbatim Report of Proceedings (Aug. 17, 2015) at 26, 28, 41 (Burton opened the door and invited them into the living room, saying, according to Hayward, " 'I can't believe she called the cops' " and " '[y]ou can search everything. I don't have her money,' that kind of thing"; Hayward testified that initially he informed Burton, " 'You don't have to let us in,' " to which she responded, " 'No, come on in.' "), 52 ("I didn't ask her for her consent to search at that point. She said, 'You can search everything.' I said: 'Okay, okay. Is there anyone else inside?' "), 29 ("And did she limit her stop of that search at any time?" Hayward answered, "No, she did not... And did you ask her to sign a consent to search without a warrant form? ... Yes, I did. ... And did you see her sign that form? ... Yes, I did.").

Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ; Michigan v. Long, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 77 L.Ed. 2d 1201 (1983).

The Ninth Circuit has taken two different approaches to these cases. The current precedent states that Buie protective sweeps are valid in "searches conducted immediately following a home arrest." United States v. Lemus, 582 F.3d 958, 961 (9th Cir. 2009). In the same case, the Ninth Circuit interpreted Buie to hold that protective sweep warrant exceptions are valid because " 'unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.' " Id. at 962 (quoting Buie, 494 U.S. at 333, 110 S.Ct. 1093 ). See, e.g., United States v. Reid, 226 F.3d 1020, 1027 (9th Cir. 2000) ; United States v. Noushfar, 78 F.3d 1442, 1448 (9th Cir. 1996) (stating "[a] protective sweep may last 'no longer than it takes to complete the arrest and depart the premises' " (quoting Buie, 494 U.S. at 335-36, 110 S.Ct. 1093 ) ). However, United States v. Garcia, 997 F.2d 1273, 1282 (9th Cir. 1993), noted that protective sweeps can occur "where officers possess a reasonable suspicion that their safety is at risk, even in the absence of an arrest." United States v. Torres-Castro, 470 F.3d 992, 997 (10th Cir. 2006) (collecting cases, including Reid, 226 F.3d at 1027, and Garcia, 997 F.2d at 1282 ). Garcia has been cited only once for its somewhat aberrant (in the Ninth Circuit) protective sweep holding, in Mendez v. County of Los Angeles, 815 F.3d 1178, 1191 (9th Cir. 2016), vacated and remanded on other grounds, --- U.S. ----, 137 S.Ct. 1539, 198 L.Ed. 2d 52 (2017). The Ninth Circuit's Mendez opinion did not apply the Garcia analysis to the case, but noted the intracircuit split and stated, "[T]he deputies' protective sweep argument fails for another reason. ... [T]he deputies did not have the requisite suspicion of danger to justify a protective sweep." Id. So at least part of the Ninth Circuit views this as an open controversy.

The Tenth Circuit also declined to extend the Buie doctrine to nonarrest situations, stating that "[f]ollowing Buie, we held that such 'protective sweeps' are only permitted incident to an arrest." Torres-Castro, 470 F.3d at 997 (noting "[w]hatever our view of the holdings in Davis and Smith, we [the panel] are not free to overrule those decisions and adopt the majority view allowing protective sweeps based on reasonable suspicion alone. Instead, we must conclude that a protective sweep is only valid when performed incident to an arrest-at least until an en banc panel of this court determines otherwise." (citation omitted) ).

For example, the First Circuit stated:
We hold, therefore, that police who have lawfully entered a residence possess the same right to conduct a protective sweep whether an arrest warrant, a search warrant, or the existence of exigent circumstances prompts their entry. See United States v. Gould, 364 F.3d 578, 584-87 (5th Cir.2004) (en banc) (stating that a protective sweep may be justified so long as police did not enter illegally); United States v. Taylor, 248 F.3d 506, 513 (6th Cir.2001) (holding that because officers can constitutionally secure an area while awaiting a search warrant to ensure that evidence will not be destroyed, "it follows logically that... the police may conduct a limited protective sweep [of that area] to ensure the safety of those officers"); cf. United States v. Garcia, 997 F.2d 1273, 1282 (9th Cir.1993) (permitting protective sweep when police were lawfully present in a home by consent); United States v. Patrick, [294 U.S. App. D.C. 393,] 959 F.2d 991, 996 (D.C.Cir.1992) (declaring, in the context of a consensual entry, that "[o]nce the police were lawfully on the premises, they were authorized to conduct a protective sweep").
United States v. Martins, 413 F.3d 139, 150 (1st Cir. 2005) (most alterations in original), abrogated by Hill v. Walsh, 884 F.3d 16, 23 (1st Cir. 2018).

Division Three held,
While making a lawful arrest, officers may conduct a reasonable "protective sweep" of the premises for security purposes. ... Buie, 494 U.S. [at] 334-35 [110 S.Ct. 1093].... The scope of such a "sweep" is limited to a cursory visual inspection of places where a person may be hiding. Id. at 335 [110 S.Ct. 1093]. If the area immediately adjoins the place of arrest, the police need not justify their actions by establishing a concern for their safety. Id. at 334 [110 S.Ct. 1093]. However, when the "sweep" extends beyond this immediate area, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id.
State v. Hopkins, 113 Wash. App. 954, 959-60, 55 P.3d 691 (2002) (footnote omitted); see also State v. Boyer, 124 Wash. App. 593, 601, 102 P.3d 833 (2004) ("In Washington, as in most other jurisdictions, the protective sweep has not be extended to the execution of search warrants."). Citing Division Three's decision in Hopkins, Division Two has similarly held, "Police may conduct a protective sweep of the premises for security purposes as part of the lawful arrest of a suspect." State v. Sadler, 147 Wash. App. 97, 125, 193 P.3d 1108 (2008) (citing Hopkins, 113 Wash. App. at 959, 55 P.3d 691 ).

Dennis continued by analyzing whether, if Washington were to adopt a nonarrest standard for the second type of Buie protective sweeps, the State could point to facts indicating that the " 'area involved in the protective sweep may harbor an individual who poses a danger to those on the scene.' " Slip op. at 13 (quoting State v. Sadler, 147 Wash. App. 97, 125-26, 193 P.3d 1108 (2008) ). The court then stated that "we need not address hypothetical situations unsupported by any evidence on the record." Id.

In its analysis, Division One cited to several federal cases, including Buie, 494 U.S. 325, 110 S.Ct. 1093 ; Long, 463 U.S. 1032, 103 S.Ct. 3469 ; Terry, 392 U.S. 1, 88 S.Ct. 1868 ; Gould, 364 F.3d 578 ; Taylor, 248 F.3d 506 ; and Patrick, 959 F.2d 991. Blockman , 198 Wash. App. at 38-40, 392 P.3d 1094.
Division One also briefly mentioned Hopkins, 113 Wash. App. 954, 55 P.3d 691, noting that the sweep in that case was incident to arrest-but was held unconstitutional because there was no articulable facts that would warrant a sweep-and Division Three had no cause to decide the issue of Buie's application outside of an incident-to-arrest context. 198 Wash. App. at 40, 392 P.3d 1094 ; see also Hopkins, 113 Wash. App. at 959 n.3, 55 P.3d 691. Division One did not cite any of the Washington Court of Appeals decision that address this issue directly. See supra note 10.

This case was a direct appeal from the superior court, and none of the parties argued that the officers' move from the entryway to the upstairs area was a Buie protective sweep.

Eserjose did not confess until arriving at the sheriff's office, and the question was whether the trial court erred in admitting Eserjose's confession-not whether the upstairs sweep was constitutional or not.

The Second Circuit also made this observation, stating, "There was also nothing preventing the officers from making explicit any concern they may have had about the presence of others in Gandia's apartment and seeking his express permission for a search of other rooms." Gandia, 424 F.3d at 263.